In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 15-2902, 15-2908, 15-3815, & 16-3496

IN RE: PETHINAIDU VELUCHAMY and
PARAMESWARI VELUCHAMY,

*Debtors.*

BANK OF AMERICA, N.A.,
Derivatively on behalf of the estate of
Pethinaidu and Parameswari Veluchamy,

*Plaintiff-Appellee,*

*v.*

ARUN K. VELUCHAMY,
ANU VELUCHAMY,
PETHINAIDU VELUCHAMY, and
PARAMESWARI VELUCHAMY,

*Defendants-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 15 CV 2075 and 15 CV 882 — **Charles R. Norgle**, *Judge.*

———————————

ARGUED SEPTEMBER 20, 2017 — DECIDED JANUARY 12, 2018

———————————

Before MANION and KANNE, *Circuit Judges*, and MILLER, *District Judge*.[1]

MANION, *Circuit Judge*. This is an appeal from the district court's decisions in bankruptcy adversary proceedings. Pethinaidu Veluchamy and Parameswari Veluchamy (collectively "senior Veluchamys") earned great wealth in various businesses. They acquired two banks in the 1990s and merged them. When this bank suffered financial problems, the senior Veluchamys personally borrowed and guaranteed loans totaling $40 million from a predecessor of Bank of America ("BoA"). But the loans went into default in 2008, and BoA obtained a judgment against the senior Veluchamys in 2010 for over $43 million.

The senior Veluchamys filed a bankruptcy petition in 2011, so BoA filed an adversary proceeding against them and their children, Arun and Anu (collectively "junior Veluchamys"), alleging a scheme to hinder, delay, or defraud creditors by attempting to hide tens of millions of dollars from BoA and other creditors. After a bench trial in 2013, the bankruptcy court determined the evidence established all of BoA's major allegations. The Veluchamys and BoA sought review by the district court, which agreed almost entirely with the bankruptcy court. The Veluchamys no longer contest the heart of the lower courts' conclusions. Instead, they appeal various particular holdings.

The senior Veluchamys raise three issues on appeal. First, they argue that turnover to the Estate under 11 U.S.C. § 542 was not the appropriate remedy regarding $5,500,000 they

[1] The Honorable Robert L. Miller, Jr., of the United States District Court for the Northern District of Indiana, sitting by designation.

claim they transferred to a company in India, particularly when that company was not joined as a necessary party. Second, they challenge the language of the district court's judgment requiring turnover of 24 pieces of jewelry. Third, they appeal the district court's denial of their motion concerning the trial record.

The junior Veluchamys also raise three issues on appeal. First, they argue the district court erred in holding them jointly and severally liable. Second, they challenge the amount of the Estate's recovery regarding VMark stock. Third, they argue the district court erred in reversing the bankruptcy court regarding Appu Hotels stock.

We affirm the district court on all issues.

## I. Background

Several bankruptcy, district, and appellate decisions elucidate the history of the rise and fall of the Veluchamy financial empire. *See Bank of Am., N.A. v. Veluchamy*, 535 B.R. 783, 786–92 (N.D. Ill. 2015) (under appeal here); *see also In re Veluchamy*, 524 B.R. 277, 285–306 (Bankr. N.D. Ill. 2014), *adopted in part sub nom. Bank of Am., N.A. v. Veluchamy*, 551 B.R. 364 (N.D. Ill. 2015), and *aff'd in part, rev'd in part and remanded sub nom. Veluchamy*, 535 B.R. 783; *see also Veluchamy v. F.D.I.C.*, 706 F.3d 810, 811–14 (7th Cir. 2013).

We focus on facts relevant to the consolidated appeals before us.

### A. Rise and fall

The senior Veluchamys earned great wealth. In 2007, their self-reported net worth was about $500 million.

Mr. Veluchamy acquired Security Bank in 1995 and Mutual Bank in 1998. He merged the former into the latter. But Mutual Bank suffered financial problems. In 2005 the Federal Deposit Insurance Corporation and the Illinois Department of Financial and Professional Regulations began investigating Mutual Bank due to concerns about its loan practices and financial condition.

Attempting to rescue Mutual Bank, the senior Veluchamys personally borrowed $30 million and personally guaranteed another loan of $10 million both from a predecessor of BoA. But Mutual Bank continued its decline. The loans went into default in 2008, and Mutual Bank closed the next year.

In August 2009, BoA sued the senior Veluchamys and others to collect on the outstanding loans. In December 2010, BoA obtained a judgment against the senior Veluchamys for over $43 million. BoA then moved to compel the return of assets fraudulently transferred by the senior Veluchamys to family and friends.

### B. Bankruptcy

Shortly before a hearing on that motion, however, on August 16, 2011, the senior Veluchamys petitioned for bankruptcy under Chapter 7, reporting a negative net worth of $55 million. BoA, derivatively as Estate Representative, filed an adversary proceeding against the senior Veluchamys and their children, the junior Veluchamys. BoA sought avoidance and recovery of fraudulent transfers and turnover of estate property. BoA alleged the senior Veluchamys engaged in an expansive scheme to hinder, delay, or defraud their creditors,

mainly by transferring cash and other assets to the junior Veluchamys.

The bankruptcy court conducted a week-long bench trial in June 2013. During this trial, the junior Veluchamys repeatedly asserted their Fifth Amendment privilege against self-incrimination. The bankruptcy court determined the evidence at trial established all the major allegations of BoA's adversary complaint. The bankruptcy court found (and proposed findings) that the senior Veluchamys fraudulently transferred $57,857,236 in various assets to the junior Veluchamys, and hid an additional $5,500,000, stock, and jewelry from creditors. The bankruptcy court found that the senior Veluchamys disposed of almost all their major assets, gratuitously or for significantly reduced consideration, before filing for bankruptcy.

The massive, intentional scheme consisted of three parts: First, the senior Veluchamys transferred millions of dollars to their children; second, the senior Veluchamys sold stock and real estate to their children at discounted prices; and third, the senior Veluchamys gave their remaining cash and assets to their children and other family members, or hid the assets. To further this scheme, the senior Veluchamys created false documents and destroyed authentic ones.

The bankruptcy court entered its corrected judgment, corrected proposed findings of fact and conclusions of law, and corrected amended memorandum of decision on December 18, 2014.

As relevant to this appeal, the bankruptcy court entered the following final judgments:

Count I: Judgment for Estate against Arun for $7,253,088 and against Anu for $8,867,283, regarding the fraudulent transfer of money from the senior Veluchamys to the junior Veluchamys.

Count III: Judgment for Estate against Arun and Anu for $9,288,977 each, regarding the fraudulent transfer of controlling shares in VMark to the junior Veluchamys.

Count X: Judgment for Estate against Arun for $1,866,229 and against Anu for $1,633,364 for the fraudulent transfer of shares in Appu Hotels and Dharani Sugars to the junior Veluchamys.

Count XXIII: Judgment for Estate against Arun and Anu for $155,000 each, regarding the fraudulent transfer of funds used to purchase Appu Hotels stock for the junior Veluchamys.

As relevant to this appeal, the bankruptcy court also proposed the following findings and conclusions:

Count XVI: Judgment for Estate against the senior Veluchamys requiring turnover of $5,500,000.

Count XVIII: Judgment for Estate against the senior Veluchamys, requiring turnover of jewelry.

Counts XX and XXI: Judgment for Estate against the junior Veluchamys, jointly and severally, for $57,857,236, aggregating judgments on other counts and imposing joint and several liability

based on theories of aiding and abetting and conspiracy.

## C. District court's rulings

The Veluchamys appealed portions of the bankruptcy court's judgment to the district court, and objected to some of the bankruptcy court's proposed findings of fact and conclusions of law. The Estate appealed part of the bankruptcy court's decision regarding Appu Hotels stock. The district court entered its judgment and amended opinion and order on August 27, 2015. The district court adopted the bankruptcy court's proposed findings of fact and conclusions of law, and affirmed in part and reversed in part the bankruptcy court's corrected judgment. The district court affirmed the bankruptcy court in all respects save one: the district court raised the judgment against the junior Veluchamys regarding Appu Hotels stock from $310,000 to $1,572,147. The district court also entered various other related orders appealed here.

## D. Appeals

The senior and junior Veluchamys filed a total of four appeals on these matters, consolidated here before us. The Veluchamys no longer challenge the general conclusion that they engaged in a broad scheme to defraud creditors of a massive amount of money. Instead, they appeal various particular holdings.

The senior Veluchamys concentrate their appellate efforts on $5,500,000 they claim they transferred to Jaya Velu Spinning Mill, Ltd.'s account at Canara Bank in India in July 2010, about a year before filing for bankruptcy. The senior Veluchamys also appeal the district court's judgment regarding

jewelry, and the district court's denial of their post-trial motion concerning the trial record.

The junior Veluchamys appeal the district court's rulings regarding joint and several liability, VMark stock, and Appu Hotels stock.

We address these issues in turn.

In general, we review lower courts' legal conclusions de novo, and we review their factual findings for clear error. *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). A factual finding is clearly erroneous if we are left with the definite and firm conviction that a mistake has been committed. *Id.*

## II. $5,500,000 in India

### A. Facts

In July 2010, the senior Veluchamys deposited approximately $5,500,000[2] in an account nominally held by Jaya Velu Spinning Mill, Ltd. ("JSM") at Canara Bank in India. JSM is an Indian company owned by the Veluchamy family. During litigation, Mr. Veluchamy demonstrated the ability to direct and control JSM. Indeed, on appeal he acknowledges evidence that he can exercise control or influence over JSM. Count XVI sought recovery of the $5,500,000.

---

[2] Despite multiple indications that this figure is an approximation, the parties and the lower courts often refer to it as if it were exact, without the caveat "approximately." Since the district court's judgment flatly refers to "$5,500,000" as the judgment on Count XVI, with the addition of pre-judgment interest, and since no parties raise any challenges on appeal to the figure's roundness, we will not disturb it.

Mr. Veluchamy testified at trial that he sent the funds to reduce the lines of credit JSM and Parameswari Spinning Mill, Ltd. ("PSM," another Indian company owned by the Veluchamy family) had established with Canara Bank. The bankruptcy court did not believe him.

### B. Bankruptcy court's conclusions and recommendations

The bankruptcy court noted the senior Veluchamys introduced no documentation to confirm this testimony. The bankruptcy court also noted the senior Veluchamys produced letters from Canara Bank to their accountant stating their payments to the bank were equity contributions to JSM, not loan repayments, yet there is no evidence JSM treated the cash as equity contributions, and the senior Veluchamys received no stock of JSM (or PSM) in exchange for the transfer. Moreover, the bankruptcy court noted the financial records of JSM and PSM do not account for the deposits and do not indicate any of the funds were returned to the senior Veluchamys.

The bankruptcy court concluded the senior Veluchamys failed to provide any evidence JSM took control of the funds and became a necessary party under Rule 19. The bankruptcy court further concluded the evidence established the funds remained on deposit with JSM, subject to direction from the senior Veluchamys about how they should be treated. Accordingly, the bankruptcy court concluded the funds are property of the estate, and recommended judgment requiring turnover of the funds.

### C. District court's rulings

The senior Veluchamys objected to the bankruptcy court's recommendation. They argued a turnover action cannot apply to the $5,500,000 because they relinquished control over

the money when they sent it to JSM's bank account in India, and because JSM was not joined to the action despite being a necessary party.

The district court overruled that objection because there is no credible evidence JSM asserted entitlement to the funds or treated the transfer as a debt payment or equity contribution. Accordingly, the district court adopted the bankruptcy court's proposed findings of fact and conclusions of law, and ordered the senior Veluchamys to turn over $5,500,000 to the Estate, plus pre-judgment interest.

### D. Arguments on appeal

On appeal, the senior Veluchamys advance several arguments against the turnover order.

First, the senior Veluchamys argue that turnover under 11 U.S.C. § 542 is not the appropriate remedy where, as claimed here, there is a legitimate dispute about ownership of the property the trustee seeks to recover. The senior Veluchamys claim they transferred the $5,500,000 to JSM. They contend JSM owns the account at Canara Bank that received the $5,500,000. They argue that because JSM had rights to this sum, Section 542 turnover is inappropriate.

Second, in a related vein, the senior Veluchamys argue the bankruptcy and district courts erred by not joining JSM as a necessary party under Federal Rule of Civil Procedure 19, as incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7019.

The Estate[3] concedes that a Section 542 order requires proof that the defendant had property of the estate in his possession, custody, or control after filing the bankruptcy petition. The Estate also concedes that if the debtor relinquished control of the property by conveying it to a third party before filing the bankruptcy petition, then the proper way to recover the property is through a fraudulent-transfer action, rather than a turnover action.

### E. Law and analysis

A Chapter 7 bankruptcy is an exchange. The debtor surrenders his assets (subject to limited exemptions not at issue here) to his bankruptcy estate for equitable distribution to his creditors. In exchange he receives discharge from his debts and a fresh start. *Palomar v. First Am. Bank*, 722 F.3d 992, 995 (7th Cir. 2013).

Section 541(a) provides that the filing of a petition for bankruptcy creates an estate comprised of a wide range of property, "wherever located and by whomever held … ." 11 U.S.C. § 541(a). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Section 521(a)(4) of the Bankruptcy Code requires a debtor to "surrender to the trustee all property of the estate … ." 11 U.S.C. § 521(a)(4).

Section 542(a) requires "an entity … in possession, custody, or control … of property that the trustee may use, sell,

---

[3] As Bank of America pursues this litigation derivatively as representative of the bankruptcy estate, we occasionally refer to Bank of America as the "Estate."

or lease [to] deliver to the trustee, and account for, such property or the value of such property … ." 11 U.S.C. § 542(a).

True, Section 542 turnover relief generally may not be used to adjudicate a debtor's underlying rights in property when ownership of that property is in dispute. *See In re Johnson*, 215 B.R. 381, 386 (Bankr. N.D. Ill. 1997) (Turnover under Section 542 "is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate."). A Section 542 turnover action generally cannot substitute for a fraudulent-transfer action. In other words, the representative of a bankruptcy estate cannot use a Section 542 turnover action to regain the debtor's interest in property when he transferred it to someone else before filing for bankruptcy. *See In re Ulz*, 388 B.R. 865, 867 (Bankr. N.D. Ill. 2008); *see also In re Roti*, 271 B.R. 281, 291 (Bankr. N.D. Ill. 2002) ("[I]f the debtor does not have the right to possess or use property at the commencement of a case, a turnover action cannot be a tool to acquire such rights.").

But here, the senior Veluchamys' interest in the $5,500,000 at the time they filed the bankruptcy petition is not subject to legitimate dispute. Both lower courts rejected the Canara canards, and concluded the purported transfer was a sham. And nothing has convinced us otherwise.

In July 2010, the senior Veluchamys deposited approximately $5,500,000 in a Canara Bank account nominally held by JSM in India. Mr. Veluchamy testified at trial that the funds were sent to reduce lines of credit that JSM and PSM had established with Canara Bank. The bankruptcy court rejected this explanation.

The bankruptcy court observed that no documentation was introduced to confirm this testimony. It also noted that even though the senior Veluchamys produced letters from Canara Bank stating that the payments were equity contributions to JSM (not loan repayments), there is no evidence that JSM treated the money as an equity contribution.

The bankruptcy court further observed the senior Veluchamys received no JSM or PSM stock in exchange for the deposits, and the records of JSM and PSM do not account for the deposits and do not indicate that any portion of them was returned to the senior Veluchamys.

The bankruptcy court determined that the evidence showed the funds remained on deposit with JSM, subject to control by the senior Veluchamys. The bankruptcy court also determined there was no credible evidence JSM took control of the funds. Instead, the bankruptcy court concluded the funds are property of the estate, controlled by the senior Veluchamys. Accordingly, it recommended entry of a judgment requiring turnover of the funds.

The district court agreed. JSM did not have entitlement to the funds. The district court determined there is no evidence JSM treated the transfer as a debt payment because there is no documentation of the transfer, no payment demands from JSM's creditors, and no debt payments to corroborate Mr. Veluchamy's original story. The district court also determined there is no evidence JSM treated the money as an equity contribution because there is no evidence of stock issuance by JSM, and JSM's records do not account for the receipt or distribution of the money. Therefore, the district court adopted the bankruptcy court's proposals regarding these funds and

entered judgment ordering the senior Veluchamys to turn over $5,500,000, plus pre-judgment interest.

In sum, the lower courts concluded the senior Veluchamys did not transfer ownership of the funds to someone else; rather, they simply moved the funds to an overseas account they controlled. Therefore, the $5,500,000 was part of the bankruptcy estate, and was subject to turnover proceedings under Section 542.

We review legal conclusions de novo. *In re Kempff*, 847 F.3d at 448. We review factual findings for clear error. *Houlihan v. City of Chicago*, 871 F.3d 540, 549 (7th Cir. 2017); *United States v. Hach*, 162 F.3d 937, 949 (7th Cir. 1998). When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Carpet Serv. Int'l, Inc. v. Chi. Reg'l Council of Carpenters*, 698 F.3d 394, 397 (7th Cir. 2012) (quoting *Nemmers v. United States*, 870 F.2d 426, 429 (7th Cir. 1989)).

Section 542(a) requires "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease [to] deliver to the trustee, and account for, such property or the value of such property … ." 11 U.S.C. § 542(a).

The Bankruptcy Code defines "entity" to include a "person." 11 U.S.C. § 101(15). The senior Veluchamys do not dispute their qualifications as "an entity." Debtors are susceptible to Section 542 turnover proceedings. *See Yoon v. Minter-Higgins*, 399 B.R. 34, 42–44 (N.D. Ind. 2008); *see also In re Dybalski*, 316 B.R. 312, 315 n.6 (Bankr. S.D. Ind. 2004).

The Bankruptcy Code defines "custodian" as (A) a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title" or (B) an "assignee under a general assignment for the benefit of the debtor's creditors" or (C) a "trustee, receiver, or agent … appointed or authorized to take charge of property of the debtor" to enforce a lien or to administer the property for the benefit of creditors. 11 U.S.C. § 101(11). Obviously the senior Veluchamys are not custodians for purposes of the exception in Section 542(a).

The lower courts determined the evidence established the $5,500,000 is property of the estate and is controlled by the senior Veluchamys. Therefore, the senior Veluchamys are liable to turn over "such property or the value of such property." 11 U.S.C. § 542(a).

The senior Veluchamys argue they transferred the funds to JSM before filing for bankruptcy, so they cannot be liable to turn over the funds under Section 542(a). They argue that the Estate's proper course was to seek avoidance under Section 548 and recovery under Section 550. They point to *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), as the starting point for determining whether a party is a transferee within the meaning of Section 550. There, we held that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* at 893. In a later case, we elaborated on the contours of Section 542:

> Section 542 is not about the obligations of transferees. It is about the obligations of persons who possess, control, or have custody, and these are normally persons who do *not* have "the right to

> put the money to [their] own purposes." A
> transferee claims an entitlement to the money;
> entities targeted by section 542 do not. The pur-
> pose of the section is to empower the trustee in
> bankruptcy to get hold of the property of the
> debtor, some of which will be in the possession,
> custody, or control of third parties.

*In re USA Diversified Prods., Inc.*, 100 F.3d 53, 56 (7th Cir. 1996). Still, Section 542 turnover may target the debtors themselves; it is not limited to third parties. *See Yoon*, 399 B.R. at 42–44; *see also In re Dybalski*, 316 B.R. at 315 n.6. After all, in *In re USA Diversified* we included the caveat "normally." And besides, fundamentally the senior Veluchamys do *not* now have the right, over and against the Estate, to put the $5.5 million to their own purposes, and do not claim such a right.

The issue here is not whether Section 542 turnover or Section 521 surrender is the appropriate vehicle for the Estate to recover the funds. The senior Veluchamys concede—and more importantly the law provides—that debtors are susceptible to Section 542 turnover actions. The senior Veluchamys do not argue on appeal that the lower courts erred by granting Section 542 turnover relief against them regarding the $5.5 million instead of granting Section 521 surrender relief against them.

The issue here is whether the senior Veluchamys transferred the funds to JSM such that Section 542 turnover relief was inappropriate. The lower courts correctly noted that turnover actions are not substitutes for avoidance actions, and found that JSM was not a transferee of the funds. The lower courts found there was no evidence JSM took control of the

funds. JSM did not meet the minimum requirement of "dominion over the money or other asset." *Bonded Fin. Servs.*, 838 F.2d at 893. The lower courts found that the evidence establishes the funds are property of the estate, controlled by the senior Veluchamys. The lower courts' determinations would overcome any presumption of JSM's ownership raised by the senior Veluchamys.

We find no reversible error regarding the application of Section 542 turnover proceedings to the $5,500,000, or regarding any other determinations about this sum, because on de novo review we find no legal errors, and because on clear-error review we find the underlying factual determinations about these funds were not clearly erroneous.

Similarly, we find no reversible error regarding the refusal to join JSM as a required party. The senior Veluchamys argue on appeal that both the bankruptcy court and the district court erroneously concluded JSM was not a required party under Rule 19(a)(1)(B).

Rule 19(a) governs persons required to be joined if feasible, and provides in part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). Bankruptcy Rule 7019 incorporates Rule 19 for adversary proceedings. FED. R. BANKR. P. 7019.

The senior Veluchamys, as the parties advocating for joinder of JSM, had the initial burden to establish JSM's interest.[4]

---

[4] The bankruptcy court cited *American General Life & Accident Insurance Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005), for the proposition that the party advocating for joinder has the initial burden to establish the absent person's interest. On appeal, the Estate echoes this citation, and adds a citation to *Citizen Band Potawatomi v. Collier*, 17 F.3d 1292, 1293–94 (10th Cir. 1994), for the proposition that a person without an interest in the subject property was not an indispensable party required to be joined. The senior Veluchamys on appeal cite *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009), for the related proposition that the party advocating for joinder has the initial burden of demonstrating that the absent person is necessary. For the sake of clarity, we confirm that in this Circuit the party advocating for joinder generally has the initial burden to establish the absent person's interest.

We have also observed that in some circumstances the absent party itself must claim an interest relating to the subject matter of the lawsuit. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 483–84 (7th Cir. 2001) (citing

But after trial, the bankruptcy court determined "the senior Veluchamys failed to provide any evidence that JSM took control of the funds and so became a necessary party. Rather, the evidence establishes that the funds are property of the estate, controlled by the senior Veluchamys … ." *Veluchamy*, 524 B.R. at 325. Similarly, the district court observed that the senior Veluchamys "presented no credible evidence that JSM took title to the funds." *Veluchamy*, 551 B.R. at 374. Therefore, the senior Veluchamys failed to meet their initial burden under Rule 19(a) to establish JSM's interest in the funds.

Nearly 25 years ago, we noted we had no clearly established standard of review for joinder under Rule 19(a). *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993). Nearly a decade ago we noted we still had yet to decide whether to review decisions applying Rule 19 de novo or for abuse of discretion. *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009). In those cases and others, we left the question open because its resolution would not control. Here, we again leave the question open for the same reason. Regardless of whether the standard of review for decisions *applying* Rule 19(a) should be de novo or abuse of discretion, the standard of review for factual determinations germane to Rule 19(a) is clear error. *See Houlihan*, 871 F.3d at 549.

In this case, the Rule 19(a) analysis turned on the factual determination that there was no evidence JSM took control of the funds as necessary to become a required party. We review

---

*United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999), for the proposition that where the absent party was aware of the action and claimed no interest, the district court did not err in finding joinder unnecessary).

this factual finding for clear error, and we find none. Besides, even under de novo review we find no error.

As we find no reversible error regarding the $5.5 million, we affirm.

### III. Jewelry

The senior Veluchamys also challenge the district court's judgment regarding turnover of 24 pieces of jewelry. The senior Veluchamys do not challenge the basic requirement that they turn over the jewelry. Instead, they challenge the judgment's wording.

Count XVIII sought recovery of jewelry. The bankruptcy court recommended finding that the jewelry is estate property and recommended ordering the senior Veluchamys to turn over the jewelry to the Estate. In a footnote, the bankruptcy court added: "To the extent that the jewelry is not available to be returned, the senior Veluchamys would be required to pay its value—as listed in the insurance policies—to their bankruptcy estate." *Veluchamy*, 524 B.R. at 325 n.28.

In turn, paragraph 9 of the district court's judgment orders the senior Veluchamys:

> to turn over either (i) the twenty-four (24) pieces of jewelry listed on pages 22 through 24 of the Corrected Proposed Findings of Fact and Conclusions of Law … entered by the Bankruptcy Court on December 18, 2014; or (ii) the equivalent cash value of the twenty-four (24) pieces of jewelry … .

(Doc. 33, Judgment in 1:15-cv-882, at 3.)

The senior Veluchamys claim the judgment is silent regarding the proper remedy if they turn over some pieces of jewelry but other pieces are unavailable for turnover. They argue the district court erred by failing to incorporate footnote 28 of the bankruptcy court's corrected proposed findings, which the district court adopted in full. They claim that since they already assisted in the turnover of two pieces of jewelry, the judgment bars them from turning over the equivalent cash value of any of the remaining pieces. They worry about being held in contempt of court if they turn over 23 pieces of jewelry but the final piece is missing.

But this is preposterous. Even if paragraph 9 lacks precise clarity, a court would not follow the senior Veluchamys' strained gloss. Besides, the judgment expressly adopts the bankruptcy court's corrected proposed findings in this regard, so footnote 28 can sufficiently embelish paragraph 9 if necessary in the future.

The district court committed no reversible error regarding the jewelry or the denial of the relevant motion to reconsider.

## IV. Trial Record

Finally, the senior Veluchamys argue the district court abused its discretion by denying their motion asking it to consider the trial record from the bankruptcy court. They argue the district court could not have fulfilled its duty to conduct a de novo review.

But the senior Veluchamys admit they did not arrange for the transmission of any record to the district court, despite Bankruptcy Rule 9033(b)'s requirement that the objecting party transmit the record. The senior Veluchamys

acknowledge the validity of the general rule relied on by the district court in denying the post-trial motion—that a lawyer's inadvertence is not a basis to grant relief under Rules 59 or 60[5]—and they have not offered any sufficient reason to temper this rule here. *See Choice Hotels Intern., Inc. v. Grover*, 792 F.3d 753, 754–55 (7th Cir. 2015). So we affirm the district court.

## V. Joint and Several Liability

We turn to the junior Veluchamys. They first argue the district court erred in holding them jointly and severally liable.

Count XX of the Estate's amended complaint sought imposition of joint and several liability upon the junior Veluchamys under a theory of aiding and abetting. Count XXI sought imposition of joint and several liability against them under a theory of conspiracy. The bankruptcy court proposed—and the district court imposed—judgment in favor of the Estate on both counts, holding the junior Veluchamys jointly and severally liable.

The junior Veluchamys argue on appeal that the Bankruptcy Code and Illinois law preclude joint and several liability under theories of aiding and abetting and conspiracy. But the Estate asserts they waived these arguments by failing to raise them in either the bankruptcy court or the district court.

It is well established that a party waives the right to argue an issue on appeal if he failed to raise that issue before the lower court: "It is axiomatic that an issue not first presented

---

[5] Incorporated into adversary proceedings in bankruptcy by Federal Rules of Bankruptcy Procedure 9023 and 9024.

to the district court may not be raised before the appellate court as a ground for reversal." *Christmas v. Sanders*, 759 F.2d 1284, 1291 (7th Cir. 1985). "[A] question not presented to the lower court will not be considered upon appeal." *Towle v. Pullen*, 238 F. 107, 111 (7th Cir. 1916) (citing *Harding v. Giddings*, 73 F. 335 (7th Cir. 1896)). A party "waive[s] the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Fednav Int'l v. Cont'l Ins.*, 624 F.3d 834, 841 (7th Cir. 2010).

In reply to the waiver assertion, the junior Veluchamys argue they *did* oppose joint and several liability below. But that argument misses the mark. The Estate does not base its waiver assertion on a lack of *any* opposition below by the junior Veluchamys to joint and several liability. Rather, the Estate bases its waiver assertion on the junior Veluchamys' failure to raise below the specific arguments regarding joint and several liability they now raise for the first time on appeal. The junior Veluchamys do not show on appeal that they raised these particular arguments below, or point to any place in the record where they made such arguments below.

Instead, they claim their appeal raises important legal issues that should survive based on "narrow exceptions to the general rule barring consideration of new arguments on appeal 'where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility.'" *Huntzinger v. Hastings Mut. Ins.*, 143 F.3d 302, 308 (7th Cir. 1998) (quoting *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir. 1977)). But the junior Veluchamys have not presented sufficient reasons demonstrating this is such an

exceptional case as to justify invoking the narrow exceptions. Moreover, they have not asserted that these legal arguments were unavailable to them below, and they have not offered any other sufficient explanation for advancing them for the first time only on appeal.

Finally, the Estate asserts it would suffer prejudice if the junior Veluchamys' new arguments survived waiver because the Estate might have developed a different record or might have pursued a different litigation strategy had the junior Veluchamys presented the arguments below. For example, the Estate argues that had it known the junior Veluchamys would challenge its right to seek joint and several liability, the Estate could have presented even more evidence showing how each of the junior Veluchamys benefited from various transactions, regardless of who was the initial transferee of a particular asset. The junior Veluchamys offer no adequate reply to the Estate's prejudice arguments.

We conclude the junior Veluchamys waived their arguments against joint and several liability, and we affirm.

## VI. VMark Stock

### A. Bankruptcy proceedings

Count III of the Estate's amended complaint claimed the senior Veluchamys fraudulently transferred their majority ownership interest in VMark to the junior Veluchamys when the senior Veluchamys caused VMark to issue 1,540,000 voting shares and 6,384,600 non-voting shares to the junior Veluchamys in August and September 2009. Count III sought avoidance of the transfers pursuant to 11 U.S.C. §§ 544(b)(1)

and 548(a)(1) and recovery from the junior Veluchamys pursuant to 11 U.S.C. § 550(a).

The bankruptcy court found the Estate proved the VMark stock was transferred to the junior Veluchamys with the intent to hinder, delay, or defraud creditors. The bankruptcy court concluded that by causing VMark to sell a controlling interest to the junior Veluchamys, the senior Veluchamys fraudulently transferred their control and income rights to their children for less than fair value.

Having found fraud, the bankruptcy court turned to an analysis of various options for relief. The bankruptcy court thoroughly considered various valuation methods. It concluded that VMark's value in August 2009 (around the time of the sales) was $57,767,275. It further concluded, based on the percentages of VMark stock transferred to the junior Veluchamys, that each of them was liable for $9,288,977. The bankruptcy court entered judgment accordingly. Finding the Estate established the elements of its collective liability theories of aiding and abetting and conspiracy, the bankruptcy court proposed the entry of joint and several liability against the junior Veluchamys on Count III for $18,577,954.

### B. District court's conclusions

After a thorough review, the district court concluded the bankruptcy court correctly determined the value of the VMark stock issued to the junior Veluchamys was $18,577,954. Accordingly, the district court entered judgment on this count against them, jointly and severally, in that amount.

*C. Arguments on appeal*

On appeal, the junior Veluchamys do not challenge the basic conclusion that their parents fraudulently transferred control over VMark by causing it to issue additional stock to the junior Veluchamys. Instead, they argue that under Section 550, the Estate's recovery is limited to the value of the increased ownership received by a transferee through a stock issuance that effectively diluted the Estate's interest in the corporation. The junior Veluchamys argue the relief should only make the Estate whole; it should only return the Estate to its position before the fraudulent transfers occurred. They argue relief should focus on what the Estate lost, not on what the transferees received. Offering alternative calculations, the junior Veluchamys argue the Estate is entitled at most to $12,476,577 for the VMark fraud.

*D. Law and analysis*

When a transfer is avoided, Section 550(a) of the Bankruptcy Code allows the trustee to recover the property transferred or "the value of such property" from the transferee. 11 U.S.C. § 550(a). The bankruptcy court had discretion to decide whether to order recovery of the property or recovery of its value. The bankruptcy court decided to award the value. The junior Veluchamys do not challenge that decision on appeal. Nor do they challenge the valuation of VMark as of August 2009.

Instead, they appeal the determination of the value of the property transferred. Section 550(a) does not define "value." The bankruptcy court thoroughly analyzed various valuation methods, and scrutinized the approaches offered by the parties' experts. The bankruptcy court determined that the value

of VMark in August 2009 was $57,767,275. The bankruptcy court then determined, based on percentages of shares fraudulently transferred, that the junior Veluchamys were each liable for $1,375,438 for the August 2009 stock transfers, and that they were each liable for $7,913,539 for the September 2009 stock transfers. Thus the bankruptcy court entered judgment against each junior Veluchamy for $9,288,977 regarding Count III. The bankruptcy court also found establishment of the elements of collective liability, so it proposed the entry of joint and several liability against the junior Veluchamys on Count III for $18,577,954. The district court agreed, and entered judgment accordingly.

The parties disagree about the standard of review. The junior Veluchamys claim the district court "committed a legal error in applying the facts to the law"—not the phrase's customary formulation—so the de novo standard applies. Alternatively, they argue the question involves a mix of law and facts, so the de novo standard still applies. But the Estate urges us to apply abuse-of-discretion review because a bankruptcy court has broad discretion in determining what remedy to employ under Section 550, including what value to ascribe to the property.

Neither party cites a Seventh Circuit case directly on point. The junior Veluchamys cite *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008), for the proposition that we review mixed questions of law and fact de novo. But the *Freeland* court did not review a Section 550 value determination de novo as a mixed question of law and fact. And, as the Estate notes, we have reviewed mixed questions of law and fact devoid of constitutional issues for merely clear error. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016).

For its part, the Estate offers a case countdown from the Tenth, Ninth, and Eighth Circuits, but does not reach us. We agree that the proper standard of review of a bankruptcy court's value determination under Section 550(a) is abuse of discretion, with clear-error deference to factual findings. Indeed, in their reply the junior Veluchamys concede we generally review valuations for clear error. *See In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). They offer no contrary binding authority, and they do not attempt to address or distinguish *In re Keeley & Grabanski Land P'ship*, 531 B.R. 771, 776 (B.A.P. 8th Cir. 2015) ("Because § 550(a) is permissive and expressly provides for alternative remedies, we review the bankruptcy court's decision as to whether the [sic] award recovery of the property, or its value, and its determination of value, for abuse of discretion.").

Abuse of discretion is a highly deferential standard. "Abuse of discretion means a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor." *Powell v. AT&T Commc'n*, 938 F.2d 823, 825 (7th Cir. 1991). A lower court "abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact." *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892 (7th Cir. 2012).

We conclude the bankruptcy court did not abuse its discretion (or commit clear error) in deciding to award the value of the VMark stock, in selecting or applying a valuation method, or in determining the value. The methodology and calculations employed by the bankruptcy court were reasonable. We also conclude the district court did not err in affirming the bankruptcy court.

## VII. Appu Hotels Stock

### A. Bankruptcy proceedings

The bankruptcy court found that on August 2, 2010, Mrs. Veluchamy and her children made transfers to Appu Hotels as follows:

> 1) $310,000 from Mrs. Veluchamy to Appu Hotels,
>
> 2) $361,103.20 from Arun to Appu Hotels, and
>
> 3) $310,814 from Anu to Appu Hotels.

These transfers total $981,917.20. Appu Hotels then issued shares as follows:

> 1) none to Mrs. Veluchamy,
>
> 2) shares worth $1,147,172.39 to Arun, and
>
> 3) shares worth $1,096,833.58 to Anu.

The values of these shares total $2,244,005.97.

A subscriber list presented by Appu Hotels shows the junior Veluchamys received new shares. The bankruptcy court noted that the amounts for which the junior Veluchamys were credited substantially exceeded the amounts traceable to their own deposits. The bankruptcy court also noted that Mrs. Veluchamy received no new stock in connection with her deposit, and the senior Veluchamys failed to identify any consideration for the deposit.

The most reasonable conclusion from this evidence, according to the bankruptcy court, was that Mrs. Veluchamy's deposit was partial consideration for the new stock issued to the junior Veluchamys. The negative inference drawn from the junior Veluchamys asserting their privilege against self-

incrimination when asked if their parents gave them funds to purchase stock in Appu Hotels bolstered this conclusion.

Accordingly, the bankruptcy court found Mrs. Veluchamy fraudulently transferred estate property worth $310,000 to the junior Veluchamys, through Appu Hotels. The bankruptcy court entered judgment against the junior Veluchamys for $155,000 each (and proposed the imposition of joint and several liability against the junior Veluchamys for $310,000 on this issue).

### B. District court's conclusions

Before the district court, both the junior Veluchamys and the Estate challenged these findings and conclusions regarding the Appu Hotels stock. The district court rejected the challenge lodged by the junior Veluchamys, and they do not attempt to resurrect it before us on appeal.

For its part, the Estate argued the bankruptcy court did not account for the full value of the fraudulent transfer. The Estate argued the bankruptcy court did not address approximately $1.3 million. The numbers listed above show this gap. Mrs. Veluchamy and her children transferred $981,917.20 to Appu Hotels but her children received shares worth approximately $1.3 million more: $2,244,005.97. Where did this $1.3 million come from? The Estate argued the senior Veluchamys were the source of this sum. None of the Veluchamys answered the question. The junior Veluchamys invoked the Fifth Amendment when asked about the source. Mrs. Veluchamy claimed she did not know if she and her husband provided all the money for the junior Veluchamys to receive the shares.

The district court recognized that the junior Veluchamys did not bear the burden to prove the unaccounted-for money

was not fraudulently transferred. But the district court concluded that their assertion of the privilege against self-incrimination, combined with the unchallenged subscription list, permitted a negative inference that additional fraudulently transferred property paid for a portion of the excessive shares the junior Veluchamys received. Moreover, in their post-trial brief, the junior Veluchamys did not dispute the Estate's assertion that fraudulently transferred funds accounted for the entire subscription.

The bankruptcy court properly found that the value the junior Veluchamys received substantially exceeded the amounts they contributed. But the court only awarded the Estate the $310,000 traced from Mrs. Veluchamy to Appu Hotels, and did not make a finding regarding the full value of the stock issued to the junior Veluchamys. Accordingly, the district court concluded the bankruptcy court committed clear error by not awarding the full amount, and the district court amended the judgment on this issue to award the Estate $1,572,147 against the junior Veluchamys, jointly and severally. This figure corresponds with the total value of the relevant shares received by the junior Veluchamys less their contributions. (The bankruptcy court dealt with their contributions in Count I.)

## C. *Arguments on appeal*

On appeal, the junior Veluchamys argue the district court erred in reversing the bankruptcy court regarding the Appu Hotels stock. They argue the district court effectively held they had to prove the shares they received were not fraudulent conveyances when the Estate should have had the burden. We disagree.

*D. Law and analysis*

The district court specifically recognized the Estate had the burden, and concluded it met it. The junior Veluchamys did not contest that all the transfers to Appu Hotels for the shares at issue were fraudulent. Nor did the junior Veluchamys challenge the accuracy of the subscription list. They invoked the Fifth Amendment regarding the source of the funds. The district court was permitted to draw negative inferences from the assertions of this privilege. *See Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005).

Contrary to the junior Veluchamys' claim, the bankruptcy court did not find that the missing $1.3 million was not the product of a fraudulent transfer. Rather, the bankruptcy court simply did not address the issue. The record indicates the bankruptcy court thought it included the remaining balance in addressing other counts, but in fact it did not include that amount. The district court discovered the omission and included the amount in the final analysis.

We agree with the district court that it was clear error not to award the full amount of the fraudulent transfers to the Estate, so we affirm the district court.

## VIII. Conclusion

As the district court did not commit reversible error regarding any matters presented to us, we affirm.

AFFIRMED.