In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2963

JESUS M. ALI,

*Plaintiff-Appellant,*

*v.*

FINAL CALL, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 6883 — **Gary S. Feinerman**, *Judge.*

ARGUED MARCH 30, 2016 — DECIDED AUGUST 10, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. Carpenters have a saying: measure twice, cut once. This litigation might have been averted if that adage had been observed here. In 1984, Jesus Muhammad-Ali painted a portrait of the leader of the Nation of Islam, Louis Farrakhan. In 2013, Ali sued The Final Call, a newspaper that describes itself as the "propagation arm of the Nation of Islam," for copyright infringement. The Final Call, it turned out,

admittedly had sold over a hundred copies of Ali's Farrakhan portrait. Ali nonetheless lost his case after a bench trial. He now appeals, arguing that the district court misstated the elements of a *prima facie* copyright infringement claim and erroneously shifted to him the burden of proving that the copies were unauthorized. Ali is correct, and The Final Call proved no defense. We therefore reverse.

**I**

The Nation of Islam is an African-American Islamic religious movement founded in 1930 and headquartered in Chicago. After its founder, Wallace D. Fard Muhammad, disappeared in 1934, Elijah Muhammad became its leader. He continued in that role until his death in 1975.

Jesus Muhammad-Ali is Elijah Muhammad's grandson and a professional portrait painter. In 1984, Ali painted a portrait of Louis Farrakhan, then—and still—the leader of the Nation of Islam. On March 14, 1986, Ali registered and recorded a copyright in the painting, which is entitled "Minister Farrakhan."

The Final Call, the Nation of Islam's official newspaper, has a weekly circulation of roughly 70,000 readers. In addition to the paper, The Final Call sells various items related to the Nation of Islam, including video recordings, books, and posters. Over the past 21 years, The Final Call has sold three sets of posters that are lithographs of Ali's original paintings.

In 2013, Ali sued The Final Call, alleging that it had infringed on his copyrights in his depictions of Louis Farrakhan, Elijah Muhammad, and Khadijah Farrakhan, Louis Farrakhan's wife. Ali later dropped the claims related to his portraits of Elijah Muhammad and Khadijah Farrakhan, but he

continued to press his claim that the Final Call had distributed unauthorized copies of the "Minister Farrakhan" portrait. In its answer, The Final Call admitted that it had sold 115 copies of the lithograph between 2010 and 2013. It maintained, however, that Ali had authorized it to produce and sell the copies. The copies it sold were titled "Allah's Star of Guidance," and featured a yellow border and text below the image reading: "Allah's Star of Guidance, The Honorable Elijah Muhammad and His Servant Minister Louis Farrakhan." The lithograph, as reproduced in Ali's summary judgment papers, is shown below:



Ali moved for summary judgment, asserting that he had proved a *prima facie* case of copyright infringement and that The Final Call had raised no defenses. While that motion was pending, The Final Call answered Ali's second amended complaint, and raised two defenses: implied license and laches. Ali moved to strike both defenses. Citing *Hobbs v. John*, 722 F.3d 1089 (7th Cir. 2013), the district court denied Ali's motion for summary judgment, holding that "The Final Call has adduced evidence that would allow a reasonable factfinder to find that Farrakhan's commission of 'Minister Farrakhan Painting' included lithographic copies, and therefore that Ali authorized the creation and sale of the copies."

Before the district court ruled on the motion to strike The Final Call's affirmative defenses, The Final Call relinquished them during a pretrial status conference. It explained that its "argument is a negative defense, not an affirmative one, which is we maintain we can establish that these were authorized copies." It described its argument as "an attack on the plaintiff's ability to establish its own burden." The district court then conducted a one-day trial, at which authorization was the sole issue. Two witnesses testified: Ali, and The Final Call's corporate representative, Fountaine Muhammad.

Ali testified that his agreement with Farrakhan included only the portrait, not lithographs, and that Farrakhan never asked him to produce lithographs. He said that he discovered in either 1985 or 1986 that The Final Call was selling lithograph copies of his Minister Farrakhan painting under the title "Allah's Star of Guidance." He did not bring suit then, however, because a lawyer advised him that he could not stop Farrakhan from exploiting his own image.

Ali also testified that he wrote a letter dated March 11, 2008, to The Final Call's attorney, Arff Muhammad. The letter expressed Ali's "hope to enter into a litho [*sic*] licensing agreement." In the next sentence, the letter referred to "[t]he commission awarded Minister Farrakhan for his oil & litho entitled 'The Star of Guidance.'" On direct and cross-examination, Ali testified that the letter was meant to notify The Final Call that what it was doing was unlawful, and that he wanted to "nudge them forward to try to establish some type of contractual relationship that was mutually lucrative." On cross-examination, he was confronted with his deposition testimony, which contained the following exchange:

> Question: But this letter that you wrote in March of 2008 says that you were commissioned to do an oil and lithograph, correct?
>
> Ali: That's what it says.
>
> Question: According to this letter, you were aware at the time that this painting was done that there were lithographs made as well, correct?
>
> Ali: Yes.

He admitted that these were his answers, but asserted that they were erroneous. He also stated that he had tried to change the last answer from "yes" to "no."

Fountaine Muhammad testified that he had worked at The Final Call since 1993. He estimated that The Final Call had roughly two or three hundred copies of the lithograph in stock at the time of his arrival. He said that, to his knowledge, no additional copies of the lithograph were made during his time at The Final Call. He confirmed that The Final Call sold 115 copies of the lithograph between 2010 and 2013, that there

was no corporate relationship between The Final Call and
Louis Farrakhan, and that Farrakhan was not acting on behalf
of The Final Call when he commissioned or accepted delivery
of the painting. Finally, Fountaine Muhammad admitted that
The Final Call had neither documentary evidence showing
that Ali authorized the creation or sale of copies of the "Min-
ister Farrakhan" painting nor "evidence of a chain of title or
transfer or how The Final Call acquired those [copies] that
were in its inventory."

The district court was unsure which party had the burden
of proving that the prints were authorized, but it concluded
that this did not matter. Either way, it said, the facts demon-
strated that Ali authorized the making of the lithographs. It
found three pieces of evidence particularly persuasive. The
first was Ali's reference, in his letter to Arff Muhammad, to
"[t]he commission awarded by [Farrakhan] for his oil & litho
entitled 'The Star of Guidance." The second was Ali's admis-
sion in his deposition that he was aware at the time the paint-
ing was made that "there were lithographs made as well." The
third was that Ali vigorously defended his rights in other
cases, but did not enforce his rights promptly in 1985–1986,
when he first discovered that The Final Call had copied the
Farrakhan portrait. The district court also alluded to the im-
plied license and first sale defenses, but it did not make clear
whether it relied on either. Ali appealed.

## II

On appeal from a bench trial, we review legal conclusions
*de novo* and factual findings for clear error. *Morisch v. United
States*, 653 F.3d 522, 528 (7th Cir. 2011). Mixed questions of law
and fact not involving constitutional rights are reviewed for
clear error. *Id.*

A

To establish copyright infringement, Ali was required to prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). No one disputes that Ali proved both of these. The district court, however, added an additional element: that Ali had to prove that the copying was not "authorized."

In doing so, it quoted from this court's opinion in *Hobbs*, 722 F.3d 1089. As it turns out, that was a mistake: while the district court quoted *Hobbs* correctly, *Hobbs* contains a transcription error. Purporting to quote the opinion in *Peters*, *Hobbs* states: "To establish his copyright infringement claim, Hobbs must prove '(1) ownership of a valid copyright; and (2) *unauthorized* copying of constituent elements of the work that are original.' *Peters*, 692 F.3d at 632." *Hobbs*, 722 F.3d at 1094 (emphasis added). But *Peters*'s recitation of the standard does not contain the word "unauthorized." See *Peters*, 692 F.3d at 632.

*Peters* omits the word with good reason: a plaintiff is *not* required to prove that the defendant's copying was unauthorized in order to state a *prima facie* case of copyright infringement. See *Feist*, 499 U.S. at 361; *Peters*, 692 F.3d at 632; *Copeland v. Bieber*, 789 F.3d 484, 488 (4th Cir. 2015); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1248 (11th Cir. 2014); *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 518 (6th Cir. 2014); *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012); *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 178 (1st Cir. 2013); *Kwan v. Schlein*, 634 F.3d 224, 229 (2d

Cir. 2011); *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004); *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998); but see *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (including word "authorized" in standard, although irrelevant to case). Rather, the burden of proving that the copying was *authorized* lies with the defendant. See generally FED. R. CIV. P. 8(c)(1) item 12 (license is an affirmative defense).

As Rule 8 indicates, "the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); see also *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (noting that "possession of a license by an accused infringer traditionally has been characterized as a matter of affirmative defense"); 2 PATRY ON COPYRIGHT § 5:118 (noting that existence of a license, that is, "permission to use" the "copyrighted work," is an affirmative defense). The burden is therefore on the alleged infringer to show that the use was authorized—not on the plaintiff to show it was not. See *Chamberlain*, 381 F.3d at 1193 ("[U]nder Seventh Circuit copyright law, a plaintiff only needs to show that the defendant has used her property; the burden of proving that the use was authorized falls squarely on the defendant."). This rule makes sense: "proving a negative is a challenge in any context," *Vieth v. Jubelirer*, 541 U.S. 267, 311 (2004), and if there is evidence of a license, it is most likely to be in the possession of the purported licensee. See *Bourne*, 68 F.3d at 631.

In coming to the opposite conclusion, the district court relied on the Seventh Circuit pattern instruction for "copying," which notes that the jury "may consider evidence that De-

fendant's work was created independently of Plaintiff's copy-righted work [or that Defendant had authority from Plaintiff to copy Plaintiff's work]." The instruction is either unclear or erroneous. There are two methods of proving "copying": (1) "that the defendant had the opportunity to copy the original (often called 'access')"; and (2) "that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters*, 692 F.3d at 633. For the "opportunity" method, "independent creation is a defense to copyright infringement," though a plaintiff must provide "evidence of access." *Id.* at 635. The pattern instruction may have been meant to rephrase this method of proof, but it falls short of doing so and invites the error we see here.

The Final Call argues that the phrases "illicit copying" and "improper appropriation," which are found in some copyright opinions, suggest that the burden to prove unauthorized copying falls on plaintiffs. As *Feist* and the many cases following it to which we have just referred show, they do not. "Improper appropriation" is a characterization of the level of resemblance sufficient to constitute "substantial similarity" to the protected work. See *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (collecting cases). "Illicit copying" is another characterization of the level of similarity sufficient to render copying infringement. See *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991). Substantial similarity is not at issue here: The Final Call admitted that the lithographs at issue were "virtually identical" to Ali's painting.

Finally, The Final Call contends that Ali's pleadings in the district court admitted that proving lack of authorization was his burden. This seems to be a waiver argument, but whatever

it is, it has no merit. Pleadings need not, and do not, allege legal theories. Second, even though Ali alleged at some points that The Final Call copied his painting without authorization, nothing in the pleadings amounts to an admission that it was his job to prove authorization.

Ali proved that he owned a valid copyright over the painting, and that lithographs sold by The Final Call were copies of it. He was required to do no more than that to prove a *prima facie* case. *Peters*, 692 F.3d at 632. Unless The Final Call proved the affirmative defense of authorization, it is liable for copyright infringement.

B

We do not need to say much about that possibility, because The Final Call presented *no* affirmative defenses in the district court. Although it originally asserted implied license and laches defenses, it waived them at a pretrial conference. The district court's verdict alluded to two defenses: license and first sale. We have our doubts about the propriety of the district court's decisions to resuscitate The Final Call's implied-license defense and to raise on its own the first-sale defense. See *Wood v. Milyard*, 132 S. Ct. 1826, 1833 n.5 (2012) (noting, in differentiating waived and forfeited defenses, that "a federal court has the authority to resurrect only forfeited defenses"). It is hard to characterize The Final Call's action as anything but waiver. And in this court, it put a nail in the coffin by failing to suggest any reason why we should excuse its waiver or find an implied license. On the outside chance that we are looking only at forfeiture, however, we will comment briefly on each defense.

1

A copyright owner has the "exclusive rights" to copy or distribute copies of the work. 17 U.S.C. § 106. The copyright owner may "authorize" another person to do so through an exclusive written license, 17 U.S.C. § 101, or a nonexclusive oral or implied license. *Shaver*, 74 F.3d at 775. There is no evidence of either a written or oral license in this case. If there is a license, it must be implied.

To establish an implied license, a party must show that "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 776 (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)). Importantly, "an implied nonexclusive license … does not transfer ownership of the copyright to the licensee." *Id.* at 775. It "simply permits the use of a copyrighted work in a particular manner." *Id.*

The Final Call (the alleged licensee) satisfied none of these elements. First, although someone did commission the portrait, it was Farrakhan—not The Final Call. Second, although Ali did make the work Farrakhan requested, he delivered it to Farrakhan—not The Final Call. Finally, there is no evidence that Ali intended that The Final Call copy and distribute his work. Even if Ali did grant such permission to *Farrakhan*—and there is no evidence that he did—nothing indicates that he granted it to The Final Call, or that Farrakhan attempted to transfer a license to The Final Call.

The district court surmised that there was a "practical identity of interests" between Farrakhan and The Final Call,

and thus that an implied license to Farrakhan would suffice to grant one to The Final Call. It noted that Ali knew that a previous portrait that he had painted of Elijah Muhammad and delivered to Farrakhan was sold through The Final Call. But that account omits crucial details. Ali and an associate *themselves* sold 52,000 copies of the portrait of Elijah Muhammad to Farrakhan. Later, Ali discovered that The Final Call was distributing additional, enlarged copies he had not authorized. After Ali confronted The Final Call, they came to a settlement where The Final Call paid Ali royalties from the additional sales.

There is no evidence that Ali had any understanding with Farrakhan or The Final Call regarding the portrait at issue in this case. Even if Ali's commission gave Farrakhan a right to make lithographs of the portrait, there is no evidence that Ali gave permission to Farrakhan to have The Final Call distribute them—or even that Farrakhan himself gave that permission. In addition, even if Farrakhan authorized a 1985–1986 distribution with Ali's permission, there is no evidence that Farrakhan or Ali gave permission to The Final Call for the 2010–2013 distribution. *Id*. (implied license does not convey copyright, but only right to use work "in a particular manner").

The district court, apparently looking to the third requirement of the implied-license test—that the licensor intends that the licensee-requestor copy and distribute her work—found that the facts showed that Ali authorized the making of the lithographs no matter which side bore the burden of proof. We have serious doubts about its reasoning on this point. Nonetheless, because The Final Call presented no evidence to

satisfy the first two elements needed to show an implied license, we need not belabor the problems with the third element.

2

The district court's verdict also alluded to the first-sale defense, though the court made no clear ruling on this theory. Ordinarily, Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be raised in the pleadings. Such a defense will be waived if raised later, however, "only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (collecting cases). The district court found that Ali was not prejudiced by a late-raised first-sale defense.

That would be all well and good if The Final Call had ever raised the first-sale defense. But it did not. A court generally may raise an affirmative defense *sua sponte* only if "the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous." *Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002) (collecting cases and noting that this limitation is necessary to assure "[a]ppropriate caution in [the rule's] exercise"); but see *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 475 (7th Cir. 1991) (finding no error in district court's *sua sponte* consideration of defense not raised where there was "substantial overlap" between it and a defense that was raised, and there was no prejudice). The Final Call seems to argue that the first-sale defense is related to whether the lithographs at issue were authorized, but first-sale is different from authorization.

Even if we assume for the sake of argument that the district court relied on the first-sale defense, The Final Call can-

not prevail. As codified in 17 U.S.C. § 109(a), the first-sale defense provides that "once a given copy has been sold its owner may do with it as he pleases (provided that he does not create another copy or a derivative work)." *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) (citing *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 145 (1998)). That copy must have been "lawfully made under this title." *Quality King Distributors*, 523 U.S. at 145 (quoting § 109(a)). Thus, "the party asserting the first sale defense bears the initial burden of satisfying the statutory requirements" for each copy at issue. See *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015); see also 3-12 NIMMER ON COPYRIGHT § 12.11 (2015).

The Final Call provided no such proof here. Even if an original set of lithographs was lawfully created, The Final Call did not prove that the ones at issue were from that batch. The only relevant evidence in the record is Fountaine Muhammad's testimony that "no additional copies of the Star of Guidance Prints were made in the 22 years since he joined The Final Call." At best, that testimony tends to prove only that The Final Call did not create unlawful copies after 1993. The copying at issue could have happened before that time. Fountaine Muhammad's testimony therefore cannot prove that the lithographs at issue were from an "authorized" batch. To the extent that the district court relied upon the first-sale defense for its verdict, it erred both on the law and on the facts.

## III

We take some responsibility for the mix-up here, in light of the mistranscription of the standard for a *prima facie* case of copyright infringement that appears in our opinion in *Hobbs*.

But the district court could have averted error if it had realized that the burden of proof on authorization was a central issue in the case that had to be resolved. The court might have thought that if the burden were Ali's, he could not prevail. If the burden were The Final Call's, however, the record did not permit the conclusion that it was entitled to judgment. And there is no doubt that the law places that burden on the party asserting license or authorization. Ali proved all he was required to, and The Final Call waived its affirmative defenses (and in any event failed to establish them). We therefore REVERSE the judgment of the district court and REMAND the case for the assessment of damages.