In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1733

LIMECORAL, LTD.,

*Plaintiff-Appellant,*

*v.*

CAREERBUILDER, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-07484 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED NOVEMBER 1, 2017 — DECIDED MAY 8, 2018

Before MANION, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Graphics-design firm LimeCoral,
Ltd., sued the job website CareerBuilder, LLC, for breach of
copyright and breach of an alleged oral agreement to pay
LimeCoral for each annual renewal of a graphic design that
LimeCoral prepared for a job posting on CareerBuilder's
website. The district court entered summary judgment in favor

of CareerBuilder, finding that CareerBuilder had an irrevocable, implied license to use LimeCoral's designs that was not conditioned upon any agreement to pay LimeCoral renewal fees. We affirm.

## I.

CareerBuilder operates the online employment website www.careerbuilder.com, where employers list job openings and job seekers can post their resumes, browse job openings by category, and submit employment applications. Employers pay CareerBuilder to post their job openings, and one option that CareerBuilder offers is a "premium job branding" that incorporates customized HTML and static and animated graphics into a job posting. As relevant here, job postings were sold for a one-year term.

LimeCoral was a small design firm that prepared media files incorporating customized graphic designs for premium job brandings on the CareerBuilder website from 2008 through 2014. Brian Schoenholtz, a former employee of CareerBuilder, was LimeCoral's principal.

LimeCoral entered into an Independent Contractor Agreement with CareerBuilder on October 1, 2008 (the "2008 Agreement"), pursuant to which LimeCoral agreed to prepare custom graphic designs on behalf of CareerBuilder's employer clients and CareerBuilder agreed to pay LimeCoral for those designs pursuant to a schedule of fees set forth in an exhibit to be attached to the agreement. CareerBuilder committed in this agreement to give LimeCoral 50 percent of its orders for online design services. The agreement was for a term of six months. The agreement specified that all graphic designs created for

CareerBuilder (included within the scope of "Confidential Information" as defined in the contract) would constitute the sole and exclusive property of CareerBuilder. The agreement said nothing about LimeCoral's entitlement to renewal fees when a CareerBuilder client renewed a job posting.

By its terms, the 2008 Agreement expired at the end of six months. The evidence indicates that the parties were unable to come to terms on a new agreement. CareerBuilder, in particular, was no longer willing to promise any particular percentage or dollar amount of its design business to LimeCoral as LimeCoral wished. (Later proposed agreements ran into the same impasse.) LimeCoral and CareerBuilder nonetheless agreed to continue doing business with one another, albeit without a written agreement. Over the course of the next six years, the relationship between the parties went on largely as before. LimeCoral continued to prepare media files incorporating custom graphic designs (more than 2,000, all told) at the request of CareerBuilder in exchange for a design fee— typically $3,000 for each new design. However, as there was no longer a written agreement transferring ownership of the copyright on the designs to CareerBuilder, LimeCoral retained ownership of the copyright and, as discussed below, implicitly granted CareerBuilder a license to use the designs. What the parties dispute is whether the license was unconditional and irrevocable, or subject to CareerBuilder's alleged agreement to pay LimeCoral an annual renewal fee for every design that CareerBuilder continued to use beyond the initial period of one year.

In practice, when an employer renewed a job posting with CareerBuilder, it would pay a fee to CareerBuilder—$10,000 or

more, according to LimeCoral. If the employer wanted an entirely new design for its posting, then CareerBuilder would commission LimeCoral or one of its other vendors to prepare the design, without regard to who had designed the original. If, however, the employer wanted to stick with the original design but make revisions to it (to incorporate a new company logo, for example), CareerBuilder routinely would, for the sake of efficiency, have the vendor who prepared the original design make the changes, and the vendor would be paid for those changes. Thus, whenever revisions to a LimeCoral design for a renewed job posting were called for, CareerBuilder would pay LimeCoral a flat fee for those modifications (typically $1500), however large or small the degree of work required.

The parties disagree as to the import of the revision fees. LimeCoral characterizes them as a practice of CareerBuilder paying it a fee for *any* renewal, given that it received the same fee even when the requisite revisions involved only an insignificant amount of work. CareerBuilder, on the other hand, insists that it only paid LimeCoral a fee when revisions were required in connection with a renewal, such that the fees were genuinely tied to the revisions rather than the renewals.

There is evidence in the record that confirms CareerBuilder's understanding of the practice. In his deposition, Schoenholtz said he "believe[d]" it to be the case both that LimeCoral had never sought a renewal fee when revisions to the original design were not called for and that CareerBuilder had never paid it a fee on renewal in the absence of revisions. R. 32-1 at 59, Schoenholtz Dep. 230–31. Additionally, email correspondence between Schoenholtz and CareerBuilder makes explicit the connection between fees and revisions to

renewed postings. In a January 2012 email to Schoenholtz, CareerBuilder's production manager, Molly Bendell, wrote:

> Thanks for reaching out, Brian. Go ahead and start the revisions so as not to hold anything up. In the meantime, I'll have a conversation with Hyemi and Loren about when to pay designers for revisions. Personally, I've always paid once the client has renewed and requested edits. If we get more money then you get more money for the work you do. If it's just a minor revision and not part of a renewal, then I usually expect that to be done as part of the original work order.
>
> Are you in agreement with that?

R. 32-1 at 202. Schoenholtz replied:

> Sounds good to me. I agree 100% with your assessment on renewals and revisions, and minor revisions on existing projects.

R. 32-1 at 202. The following year, there was a similar email exchange. CareerBuilder's Bendell advised Schoenholtz:

> … And, to clarify, we only pay you guys [design vendors] at renewals when a client requests changes. We treat it as a new project, essentially … so if they renew in January and don't request edits until March that same year, then we would still pay you. If they ask for further edits throughout the year after that, then that's a one-off you need to discuss with the Brand Strategist.

Does that all help clarify?

R. 32-1 at 204. Schoenholtz responded:

No worries on my side, just wanted to explain the situation so you guys know I'm not trying to get greedy. …

R. 32-1 at 204.

In 2014, CareerBuilder reduced the volume of its orders for online design work to LimeCoral. Although, upon expiration of the 2008 Agreement, CareerBuilder had not formally committed to direct any particular amount of business to LimeCoral, in practice CareerBuilder's Bendell had made it a "goal" to give LimeCoral an average of $35,000 per month in design work. But once CareerBuilder decided in 2014 to award a certain type of work to another firm, Bendell advised Schoenholtz that CareerBuilder would no longer meet the $35,000 per month goal. At that point, LimeCoral concluded that it was not being sufficiently compensated to warrant continuation of the license CareerBuilder had been granted in its works. In a letter dated July 17, 2014, LimeCoral notified CareerBuilder that it was revoking the latter's license to continue using any media file prepared by LimeCoral and used beyond the one-year period for which CareerBuilder had paid a design or revision fee. CareerBuilder declined to comply with LimeCoral's demand that it remove any such media files from its website, prompting LimeCoral to file this lawsuit.

LimeCoral charged CareerBuilder with breach of contract, based on its alleged failure to pay renewal fees to LimeCoral, and breach of copyright on the hundreds of media files that

CareerBuilder continued to use for more than one year following their creation (or renewal) and after LimeCoral had declared that it was revoking the license on such files.

The district court granted summary judgment to Career-Builder on both claims. The court reasoned that, upon the expiration of the parties' original written contract, Career-Builder had acquired an implied, non-exclusive license to use LimeCoral's designs, and that, contrary to LimeCoral's assertions, there was no subsequent oral agreement that imposed any conditions on that license. In particular, the court found no evidence to support the notion that CareerBuilder had agreed to pay LimeCoral a renewal fee whenever a customer renewed a job posting, even if no revisions to the LimeCoral design were required. "[I]t is undisputed," the court wrote, "that for a period of over six years and two thousand projects, LimeCoral has not pointed to evidence showing that CareerBuilder ever paid any renewal fee or that LimeCoral asked for any renewal fee." R. 64 at 10. Even if there were proof sufficient to establish such an oral agreement, the court added, the record made clear that LimeCoral had waived any claim to breach of such an agreement by remaining silent for so long when such fees were not being paid. The absence of proof that CareerBuilder promised to pay LimeCoral renewal fees, and that the license to use LimeCoral's media files was conditioned on such a promise, was fatal to both the copyright claim and the contract claim.

## II.

On appeal, LimeCoral renews its contention that CareerBuilder agreed to pay it a fee for the renewal of any job

posting and that CareerBuilder's license to use LimeCoral's copyrighted work was subject to that agreement. Career-Builder's refusal to pay LimeCoral renewal fees gave Lime-Coral the power to revoke the license on its works and, in LimeCoral's view, rendered CareerBuilder liable for breach of the purported agreement and for copyright infringement on any media files CareerBuilder continued to use despite LimeCoral's revocation of the license to use them.

Following the expiration of the 2008 independent contractor agreement, the parties, as we have discussed, continued to transact business as before. Although the expiration of the 2008 Agreement meant that ownership of the copyrights in the job brandings that LimeCoral created now remained with LimeCoral, there is no dispute that CareerBuilder acquired a non-exclusive implied license to use those brandings. 3 Nimmer on Copyright § 10.03 (A)(7) (Matthew Bender, rev. ed. 2018); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *see also Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 762 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 681 (2017); *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940–41 (7th Cir. 2003) (Ripple, J., concurring); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999). LimeCoral created the brandings at the request of CareerBuilder and conveyed them to CareerBuilder with the understanding that CareerBuilder would use them on its website. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990) (cited with approval in *I.A.E.*). Absent a limitation imposed on the license at the time these works were delivered to CareerBuilder, the license impliedly granted to CareerBuilder would encompass all of the rights of LimeCoral as the copyright holder. *See Latimer v.*

*Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010); *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008). In view of CareerBuilder's payment for the job brandings, its license would also be irrevocable. Nimmer § 10.02(B)(5); *I.A.E.*, 74 F.3d at 777; *see also Asset Mktg. Sys.*, 542 F.3d at 757; *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879, 882 (5th Cir. 1997).

LimeCoral contends that the license acquired by CareerBuilder was conditioned upon CareerBuilder's agreement to pay LimeCoral a renewal fee for every branding that was renewed beyond the initial one-year term by Career-Builder's customer.[1] Once its business from CareerBuilder dropped off and LimeCoral (by its own account) learned that there were some renewed job brandings for which it was not receiving a renewal fee from CareerBuilder, it purported to revoke CareerBuilder's license to continue using the brandings that LimeCoral had created. In fact, as we discuss below, the record indicates that LimeCoral was never paid renewal fees as such, that LimeCoral knew this, and that the license it conveyed to CareerBuilder was never conditioned on the payment of such fees.

LimeCoral suggests that the parties had an understanding as to its entitlement to renewal fees from the outset of their relationship, but the 2008 independent contractor agreement contradicts such an understanding. That written agreement, which by its terms expressly superseded any and all oral

---

[1] LimeCoral does not contend on appeal that the license was also conditioned upon a promise by CareerBuilder to give LimeCoral a particular percentage or dollar amount of business.

agreements preceding it, conveyed complete ownership of the copyright in each job branding to CareerBuilder, with no attendant obligation by CareerBuilder to pay LimeCoral a renewal fee. So the notion that there was an agreement at the inception of the parties' relationship to pay renewal fees is a non-starter.[2]

Nor is there any evidence that upon or subsequent to the expiration of the 2008 Agreement, CareerBuilder ever agreed to pay LimeCoral a renewal fee for each branding renewed by a CareerBuilder customer. Schoenholtz admitted, when asked, that he could not recall an instance in which CareerBuilder agreed to pay LimeCoral a fee for each and every renewal. R. 32-1 at 64, Schoenholtz Dep. 250–51. "I—offhand, no. I can't think of anything that's relating to what you're talking about," he said. It is true, as LimeCoral points out, that elsewhere in his deposition (and in his post-deposition affidavit), Schoenholtz contended summarily that there was an oral agreement between the parties that LimeCoral would be paid renewal fees. But Schoenholtz, as LimeCoral's principal, would be the individual with knowledge as to the timing and terms of any such agreement. The fact that he could not "think of anything"

---

[2]   LimeCoral suggests that because a schedule of fees was, in fact, never attached to the contract as the parties envisioned, the agreement was only partially integrated, leaving LimeCoral free to resort to extrinsic evidence to show that their agreement, from the start, included an unwritten promise to pay LimeCoral a fee for each and every renewal. Yet, as we discuss below, LimeCoral had identified no evidence of such a promise (in 2008 or later) and, to the contrary, what record evidence there is on this subject indicates that there was never an agreement to pay, nor a practice of paying, LimeCoral renewal fees as such.

relating to such an agreement, in the face of CareerBuilder's consistent denials that there ever was such an understanding, leaves, shall we say, a large hole in LimeCoral's case for the existence of a limitation on CareerBuilder's license to use the brandings.

Reinforcing the point are the two instances in 2012 and 2013 in which CareerBuilder expressly advised Schoenholtz that CareerBuilder was not and would not be paying renewal fees to LimeCoral, and Schoenholtz expressed his agreement with this understanding. Thus, when production manager Bendell explained to Schoenholtz that CareerBuilder would only pay LimeCoral when a customer both renewed a job posting and requested edits to the graphic files, Schoenholtz replied that he "agree[d] 100%" with that understanding. R. 32-1 at 202. And when, the following year, Bendell again advised Schoenholtz that "we only pay [design vendors like LimeCoral] at renewals when a client requests changes [to the design]," Schoenholtz expressed "[n]o worries on my side … ." R. 32-1 at 104. These interchanges are directly contrary to the idea that Career-Builder had agreed to compensate LimeCoral for all renewals. And, of course, Schoenholtz acknowledged in his deposition that, consistent with these emails, LimeCoral in fact had been paid fees in connection with renewals only when revisions to its original designs (be they large or small) were called for. R. 32-1 at 59, Schoenholtz Dep. 230–31.[3]

---

[3]   In its initial brief, LimeCoral has characterized certain of Schoenholtz's interchanges with CareerBuilder on this point as manifesting an "agreem[ent] to disagree." LimeCoral Brief 35, 46. But as CareerBuilder

(continued...)

These communications do show that CareerBuilder was paying LimeCoral for any revisions to the job branding requested at the time of renewal; and because the revisions were minor in some instances, LimeCoral treats Career-Builder's willingness to pay a fee for minimal revisions as an agreement to pay for any renewal, period. But this elides the distinction between a revision fee and a renewal fee. It is undisputed that CareerBuilder paid LimeCoral whenever revisions to an existing job branding were called for, even if the revisions took little effort on LimeCoral's part. (We may set aside any question about what might differentiate minor from major revisions.) Given that the fee paid to LimeCoral was the same whatever the degree of revisions called for, Career-Builder (and LimeCoral, for that matter) may have thought that everything would wash out in the end as between labor-intensive and labor-minimal revisions. The essential point is that the fee was tied to revisions rather than a simple renewal.

There is, then, no evidence that would permit the factfinder to conclude that there was an agreement between LimeCoral and CareerBuilder that LimeCoral would be paid a fee for each renewal, and that the implied license LimeCoral granted to CareerBuilder to use the job brandings was subject to that agreement. The license was, consequently, unconditional and irrevocable, and encompassed the rights to use and distribute the job brandings as CareerBuilder and its customers wished.

---

[3] (...continued)
naturally and rightly points out, an agreement to disagree is no agreement at all.

This dooms LimeCoral's copyright claim as well as its claim for breach of contract.

As we have noted, the district court went on to conclude, alternatively, that even if there were an agreement between CareerBuilder and LimeCoral as to renewal fees, LimeCoral waived any breach of that agreement by remaining silent for the duration of the six-year relationship between the parties despite its awareness that CareerBuilder was not paying it a fee for all job-branding renewals. In view of our conclusion that the record does not support the notion that there was any such agreement, we need not take up the matter of waiver.

Finally, LimeCoral contends that the district court improperly denied as moot its cross-motion for partial summary judgment on the matter of its ownership of the copyright on the job brandings; but we can find no fault in the court's judgment on this point. CareerBuilder did not contest LimeCoral's ownership of the copyright as to works created after the expiration of the 2008 Agreement, and although ownership was obviously a key element of LimeCoral's copyright infringement claim against CareerBuilder, it was not the only element. The copyright claim failed for the reasons we have discussed: CareerBuilder had an implied license to use the works that was neither limited nor revocable. And because the claim failed on those grounds, there was no need to grant LimeCoral partial summary judgment on the limited (and uncontroverted) matter of who owned the copyright.

## III.

As the implied license granted to CareerBuilder to use the graphic works in question was not conditioned on any

agreement to pay LimeCoral renewal fees, the district court properly granted summary judgment to CareerBuilder on LimeCoral's claims of copyright infringement and breach of contract.

AFFIRMED