> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 19, 2019[*]
Decided December 19, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1303

| | |
|---|---|
| JIMMY BALDWIN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 18-cv-872-jdp |
| | |
| RICK RAEMISCH, et al., | James D. Peterson, |
| *Defendants-Appellees*. | *Chief Judge*. |

## O R D E R

Jimmy Baldwin sued officials at Stanley Correctional Institution in Wisconsin, alleging that they imposed a year of disciplinary segregation without affording him due process, in violation of the Fourteenth Amendment. He also claimed that the prison's security director maliciously prosecuted him by cooperating with local law enforcement

---

[*] The defendants were not served with process and are not participating on appeal. We have agreed to decide this case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

to file a criminal charge against him. The district court dismissed the complaint at screening, and we affirm.

We accept as true the facts alleged in Baldwin's complaint and consider the documents that he attached to it as part of the pleadings. *See* FED. R. CIV. P. 10(c); *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745–46 (7th Cir. 2017). In 2009, Stanley officials were sent an "amended judgment" that reduced Baldwin's sentence from 73 years to 20 years. Because Baldwin had served beyond the mandatory release date,[1] he was eligible for release. Baldwin reported his confusion about the amended judgment to his prison social worker, explaining that he had not litigated any sentence modification and was not aware of anyone else having done so on his behalf. During the ensuing proceedings before the parole board, he again expressed his surprise about the amended judgment. Apparently unconcerned, the parole commission granted Baldwin release in January 2010. While he was out, Baldwin stayed in Milwaukee and complied with the conditions of his parole.

Later that month, Warren Dohms, the captain of security at Stanley, learned that Baldwin's amended judgment was not authentic. Baldwin was apprehended and reincarcerated (he was placed in segregation at Jackson Correctional Institute) while Dohms investigated the matter. The supervisor of Stanley's records office sent a copy of the suspect judgment to the Milwaukee County Clerk of Courts. A court employee confirmed that the document was not authentic—it was a "cut and paste job." Officials at Stanley then issued Baldwin a conduct report accusing him of escape, counterfeiting, and forgery. A document informing him of his disciplinary hearing rights explained that the hearing would be held at least two days after he received the conduct report, and that he would be allowed to present evidence, question adverse witnesses, and request his own witnesses. Baldwin requested four witnesses: the court employee responsible for amended judgments, Dohms, a fellow inmate (as a character witness), and the records-office supervisor. The hearing officer allowed Dohms and the supervisor to testify but denied the other witnesses.

Baldwin asked the staff advocate assigned to help him prepare for the hearing to gather two pieces of exculpatory evidence: a written statement from the social worker attesting to Baldwin's requests for assurances that his amended judgment and subsequent release were legitimate, and a record of the parole proceedings, which

---

[1]        In Wisconsin, the "mandatory release date" is presumptively the date that a prisoner has served two-thirds of their sentence. *See* WIS. STAT. § 302.11(1).

would demonstrate that Baldwin had expressed surprise about the amended judgment. The hearing occurred within two days after Baldwin received the conduct report, however, so the staff advocate did not have time to obtain the requested evidence.

At the hearing, Baldwin objected to the lack of notice, the denial of his requested witnesses, and the insufficient time that he had to gather evidence, but the hearing proceeded. Again over Baldwin's objections, the disciplinary committee privately interviewed the records-office supervisor. Ultimately, the committee found Baldwin guilty of violating institutional rules and imposed a punishment of 8 days of adjustment segregation, 360 days of program segregation, and 10 days' denial of good-behavior credit. Baldwin served his segregation at the Wisconsin Secure Program Facility. While in this restricted environment, he was not allowed visitors, had limited opportunities to leave his cell, and was isolated to the point of "mental anguish." He unsuccessfully appealed the decision within the Department of Corrections, and he eventually filed suit in Wisconsin state court, where his case was dismissed in 2012.

In the meantime, Dohms was working with the county sheriff's department to investigate Baldwin and other inmates thought to be involved in a conspiracy to forge amended judgments. Baldwin was criminally charged in 2012, but the charges were dropped two years later for lack of evidence.

Baldwin then filed this lawsuit in 2018, alleging that the disciplinary committee found him guilty of violating institutional rules without due process. *See* 42 U.S.C. § 1983. He also claimed that Dohms's pursuit of criminal charges against him amounted to malicious prosecution. At screening, *see* 28 U.S.C. § 1915A, the district court construed Baldwin's complaint as challenging the administrative decision that led to the loss of good-time credit and concluded that this claim could be brought only under 28 U.S.C. § 2254. Further, the court determined that any claim for damages was blocked by *Heck v. Humphrey*, 512 U.S. 477 (1994), because success would imply the invalidity of the disciplinary conviction. The district court next concluded that Baldwin did not state a federal constitutional claim against Dohms for pursuing a criminal investigation without evidence of Baldwin's involvement. Finally, to the extent that Baldwin stated a claim for the state-law tort of malicious prosecution, the court concluded that it lacked subject matter jurisdiction under 28 U.S.C. § 1332. Baldwin appealed.

Prisoners can bring suits for damages under § 1983 for the denial of due process if the denial resulted in the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S.

472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 218 (2005). Segregation under certain conditions may constitute such a deprivation. *See Wilkinson*, 545 U.S. at 224; *Westefer v. Snyder*, 422 F.3d 570, 589–90 (7th Cir. 2005). Further, such a claim does not implicate *Heck*. *See Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006). The district court did not assess whether Baldwin stated a claim based on his transfer to another facility for a year of disciplinary segregation. We do not decide whether he sufficiently alleged an "atypical and significant" hardship, however, because we may affirm on any ground contained in the record. *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).

Baldwin's due-process claim is barred by the statute of limitations. Although untimeliness is an affirmative defense, a complaint can be dismissed sua sponte if a valid affirmative defense is so plain from the face of the complaint that the suit is frivolous. *See Muhammad–Ali v. Final Call, Inc*. 832 F.3d 755, 763 (7th Cir. 2016). For § 1983 claims, federal courts borrow the statute of limitations governing personal injury actions in the state where the injury took place. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). At the time of Baldwin's disciplinary hearing in 2010, Wisconsin had a six-year personal injury statute of limitations. *See* WIS. STAT. § 893.53 (2009); *Cannon v. Newport*, 850 F.3d 303, 305–06 (7th Cir. 2017). Baldwin's claim accrued when he was injured by that allegedly deficient hearing. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). He thereafter exhausted his administrative remedies—also in 2010—by appealing that decision through the prison's appeals process. *See* 42 U.S.C. § 1997e(a); *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (noting that limitations period is tolled while prisoner pursues administrative appeal). Baldwin thus had until 2016 to file his complaint alleging due-process violations under § 1983; but he did not do so until 2018. On the face of his complaint, therefore, his due-process claim is untimely.

Baldwin next contends that the district court erred by construing his "malicious prosecution" claim as one arising under state law instead of the Fourteenth Amendment. There is no such claim under the Due Process Clause, however. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017); *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019) (explaining that there is no federal constitutional right not to be prosecuted without probable cause). Baldwin's allegations instead resemble Wisconsin's intentional tort of malicious prosecution, which includes the element of being prosecuted without probable cause. *See Wis. Pub. Serv. Corp. v. Andrews*, 766 N.W.2d 232, 238 (Wis. Ct. App. 2009). The jurisdictional dismissal of that claim is without prejudice, and thus Baldwin is not precluded from bringing it in the proper court (although there might be other impediments to him turning back to state court).

We have considered Baldwin's remaining arguments, and none has merit.

AFFIRMED