Edward L. STEVENS,
Plaintiff-Appellant,

v.

GREYHOUND LINES, INC.,
Defendant-Appellee.

No. 82–1663.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1983.
Decided June 23, 1983.

Loren J. Comstock, Indianapolis, Ind., for plaintiff-appellant.

Eugene O. Maley, Smith, Maley & Douglas, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and MORAN, District Judge.[*]

* The Honorable James B. Moran, District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

COFFEY, Circuit Judge.

This case is a consolidation of two actions alleging that the defendant Greyhound Lines, Inc. discriminated against the plaintiff on the basis of race in terminating his employment on three separate occasions. The district court dismissed the plaintiff's lawsuit pursuant to Federal Rule of Civil Procedure 41(b)[1] for failure to prosecute the actions and pursuant to Federal Rule of Civil Procedure 37(b)(2)(C)[2] for failure to cooperate in discovery. The court further denied the plaintiff's motion for relief from the dismissal order pursuant to Federal Rule of Civil Procedure 60(b).[3] We affirm.

### I.

The plaintiff, as a black male, was employed by Greyhound Lines as a bus driver in 1966. In August of 1973, Stevens was discharged from his employment with Greyhound for allegedly hitting a fellow Greyhound employee, Valerie Billups, but after an arbitration hearing, was reinstated in January of 1974. Greyhound again terminated the plaintiff's employment seven months later in July of 1974, this time for allegedly falsifying his time records and for becoming "involved in an altercation with a [Greyhound] terminal employee which resulted in [Stevens] receiving a gun shot wound ...." Stevens again went to arbitration and was ordered reinstated to his employment. Four years later, while in Greyhound's employ, Stevens filed his first federal district court suit alleging that Greyhound had discriminated against him on the basis of race in terminating his employment in 1973 and 1974.[4] The district court set a trial date of August 11, 1980.

Sometime in 1979,[5] the plaintiff received a third and final discharge for allegedly harassing a fellow employee at the Greyhound terminal. On August 7, 1980, four days before the lawsuit arising from the 1973 and 1974 employment discharge was scheduled for trial, Stevens filed a second lawsuit in the district court, alleging that he had been discharged a third time because of his race and also because he had previously sued Greyhound for racial discrimination. The court granted Stevens' motion to consolidate both racial discrimination actions, and set a trial date of September 21, 1981 for the consolidated actions.

1. Fed.R.Civ.P. 41(b) provides:
   "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

2. Fed.R.Civ.P. 37(b)(2)(C) recites:
   "(b) Failure to Comply with order.
   \* \* \* \* \* \*
   "(2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
   \* \* \* \* \* \*

   "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
   \* \* \* "

3. Fed.R.Civ.P. 60(b) states:
   "(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ...."

4. The Amalgamated Transit Union, Stevens' collective bargaining representative, was also named as a defendant, but was later dismissed from the action and is not involved in this appeal.

5. The record does not disclose the exact date of Stevens' third discharge.

On July 14, 1981, approximately two months before the scheduled trial date, the plaintiff filed a formal complaint against his attorney with the Indiana Supreme Court Disciplinary Commission, alleging that his attorney "didn't care about handling [the] case" and that his attorney had made disparaging racial remarks concerning him (Stevens). After the filing of this complaint, the plaintiff's attorney moved the district court for permission to withdraw from representing the plaintiff. Stevens opposed the withdrawal motion, even though he had previously expressed his dissatisfaction with his attorney to the Disciplinary Commission. In light of the contested withdrawal motion, the court once again continued the September 21, 1981 trial date, and reassigned the case for trial to begin on December 14, 1981.

At an October 30, 1981 pre-trial conference, the trial court granted Stevens' attorney's leave to withdraw and instructed the plaintiff to secure new counsel.[6] Late in the week preceding the December 14, 1981 trial date, the court learned that the plaintiff in fact had failed to obtain new counsel as of this date and would be without counsel for trial on December 14. Nevertheless, the court held an on-the-record conference on December 14, 1981.

At the conference the plaintiff stated that while he had made efforts to obtain new counsel through the NAACP, he informed the court that he had not yet formally retained a lawyer. The primary reasons the plaintiff gave for his lack of counsel were his inability to obtain his records from his former counsel and lack of funds sufficient to retain new counsel. In an effort to remedy the situation, Judge Steckler had his clerk arrange with the lawyer for the return of Stevens' records. The attorney also agreed to waive any outstanding fees for representing Stevens. The court advised Stevens that he could obtain his records from the attorney, after which the following discussion took place:

"THE COURT: Well, all I can say, now we will give a new trial date, and I will

tell you, Mr. Stevens, I will have no alternative except to dismiss your lawsuit if we don't go to trial on the next trial date. Now, when can you get a lawyer? I'm going to let you tell me. I'm trying to accommodate you.

"MR. STEVENS: I think it will take me—well, I can get a lawyer, but the fact by the time he reads the files, and I think it will probably take me a month to go back to trial, by the time I pay a lawyer, borrow money to pay a lawyer and so forth.

\*  \*  \*  \*  \*  \*

"THE COURT: Do you have a date? I want to give him plenty of time. I want the case prepared; I want to try it. If he wants another year, we will give him another year.

"MR. STEVENS: I want to get it off with myself personally, because it's a lot of mental strain on me and my family. If you have never been fired or nothing, you don't know what you go through. It's a mental strain with me myself personally, because I know I'm right.

"THE COURT: That is what we want to try to find out, whether you are right or whether you are wrong.

"MR. STEVENS: That's what I want.

\*  \*  \*  \*  \*  \*

"THE COURT: I want to give him at least 60 days.

"MR. STEVENS: I appreciate that, sir.

"THE COURT: 60 or 90 days.

"MR. STEVENS: I'd like to know the exact date.

"THE COURT: We might even give him six months.

"MS. HICKS [plaintiff's witness]: That's nice.

"THE COURT: I just don't want to hear you come back and complain you didn't have time to get your work done.

"MR. STEVENS: I appreciate that.

"MR. HALBERSTADT: [court clerk] May 3?

---

**6.** Although no record of the October 30 pre-trial conference exists, the court's order dismissing the plaintiff's suit states that Judge Steckler

instructed the plaintiff, at the conference, to secure new counsel.

"THE COURT: Put it on for the month of March. Give him the end of March. That gives him almost 90 days.

"MR. HALBERSTADT: That will be March 29th.

"THE COURT: I don't know what about your situation.

"MR. MALEY: [defendant's attorney] That will be fine, Your Honor. I was just trying to—the week of the 29th of March is fine, and we will be prepared.

"THE COURT: Well, the case is reset for March 29th.

"MR. HALBERSTADT: 9:30 a.m.

"THE COURT: And if we don't get it tried then, I don't know how we will be by the time we get to it.

"MR. STEVENS: I will be prepared, sir. The file was all I needed. I will be prepared. If I don't, it won't be no excuse as far as I am concerned, because you did give me that time."

On March 1, 1982, the defendant served the plaintiff with a notice to take his personal deposition on March 16, 1982 along with a subpoena *duces tecum* requesting the plaintiff to bring with him copies of all documents he intended to submit as exhibits at trial. After Stevens appeared at the deposition empty-handed, without counsel and without copies of the documents, the following exchange between the defendant's attorney and Stevens took place:

"Q: This is a subpoena for you to appear at the offices of John Connor & Associates, Court Reporters, on Tuesday, March 16, 1982 at 9 o'clock a.m. for deposition?

"A: Yes, it is.

"Q: This document provides to bring with you copies of all documents that you as plaintiff intend to submit as exhibits at trial of the above causes of action; is that correct?

"A: That's what it says.

"Q: Do you have with you copies of the documents that you intend to submit as exhibits at trial of this cause of action on March 29, 1982?

"A: No.

"Q: Are you represented by an attorney today?

"A: No.

"Q: Do you have an attorney presently representing you?

"A: No.

"Q: Are you willing to proceed with deposition today without counsel?

"A: No.

"Q: You are indicating that even though you have been given notice of the deposition and served with subpoena that you are refusing to proceed with deposition today, March 16, 1982?

"A: That is correct.

"MR. MALEY: I would like to introduce as part of the record these exhibits 1 and 2 being the notice to take the deposition and the subpoena duces tecum to give deposition.

"Q: Do you have any objection to those two documents being made part of the record to be submitted to the Court?

"A: Don't make me no difference.

"Q: You do understand that a copy of this proceeding that we have had this morning is going to be submitted to Judge Steckler?

"A: Yes.

"Q: Knowing that, it is still your position that you will not proceed with deposition today?

"A: That's correct."

The next day Greyhound moved the court to dismiss the plaintiff's actions pursuant to Federal Rules of Civil Procedure 37(b)(2)(C) and 41(b), and on March 18 the court granted Greyhound's motion, dismissing the actions with prejudice "for failure to prosecute pursuant to Fed.R.Civ.P. 41(b) and for failure to make discovery. Fed.R.Civ.P. 37(b)(2)(C)." On April 9, 1982, Attorney Loren J. Comstock appeared before the court on behalf of the plaintiff and filed a motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from the court's dismissal order. The trial court denied the Rule 60(b) motion. The plaintiff appeals from the court's dismissal order and from the denial of his Rule 60(b) motion.

## II.

The first issue in this case is whether the district court properly relied on Federal Rule of Civil Procedure 37(b) in dismissing the plaintiff's action after Stevens failed to deliver the subpoenaed material and refused to proceed with his deposition. In its dismissal, the court cited Rule 37(b)(2)(C), which provides that a suit may be dismissed if "a party ... fails to obey an *order* to provide or permit discovery ...." (emphasis added). As the court stated in *Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 994 (8th Cir.1975): "Fed.R.Civ.P. Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It has no application if there has not been a court order." *Accord,* 8 *Wright & Miller, Federal Practice and Procedure* Section 2289. Since the trial court did not issue a discovery order directing the plaintiff to submit to deposition prior to dismissing the suit, the trial court's reliance on Rule 37(b)(2)(C) in dismissing the plaintiff's suit was misplaced. Furthermore, even though the court did not cite Rule 37(d) as a basis for its dismissal order, it is clear that Rule 37(d) also fails to provide a basis for dismissing the plaintiff's suit. Under Rule 37(d), the court may impose sanctions directly, without first issuing an order to compel discovery where "a party ... fails ... to appear before the officer who is to take his deposition after being served with a proper notice...." Federal Rule of Civil Procedure 37(d); *Charter House Ins. Brokers v. New Hampshire Ins.,* 667 F.2d 600, 604 (7th Cir.1981). Rule 37(d) had been construed as follows:

> "[W]e believe that the term 'appear' as used in Rule 37(d) must be strictly construed, limiting it to the case where a defendant literally fails to show up for a deposition session. Where a defendant does in fact appear physically for the taking of his deposition but refuses to cooperate by being sworn and by testifying, the proper procedure is first to ob-

tain an order from the court, as authorized by Rule 37(a), directing him to be sworn and testify."

*Securities and Exch. Comm. v. Research Automation Corp.,* 521 F.2d 585, 588–89 (2d Cir.1975).[7] *Accord, Securities and Exchange Comm. v. American Beryllium & Oil Corp.,* 303 F.Supp. 912, 920 (S.D.N.Y.1969). Since the plaintiff in this case did *appear* for his deposition (though he then refused to answer any questions), we conclude that dismissal under Rule 37(d) would not have been appropriate.

We next consider whether the district court properly dismissed the plaintiff's suit under Rule 41(b) for failure to prosecute. Appellate review of a Rule 41(b) dismissal order for failure to prosecute is limited to whether the district court abused its discretion in dismissing the plaintiff's actions. *Link v. Wabash,* 370 U.S. 626, 629–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Jafree v. Scott,* 590 F.2d 209, 212 (7th Cir.1978). "No exact rule can be laid down as to when a court is justified in dismissing a case for failure to prosecute. Each case must be looked at with regard to its own particular procedural history and the situation at the time of dismissal." *Scarver v. Allen,* 457 F.2d 308, 309 (7th Cir.1972), quoting *Sandee Manufacturing Company v. Rohm and Haas Company,* 298 F.2d 41, 43 (7th Cir.1962).

Our resolution of this case is governed by the principles set forth in this court's recent decision in *Locascio v. Teletype Corporation,* 694 F.2d 497 (7th Cir.1982). In *Locascio,* the plaintiff brought a class action suit alleging age discrimination. The plaintiff's first attorney withdrew from the case ten days after filing the suit, and more than three years later, the plaintiff's second attorney also withdrew from the case because of a "progressive deterioration in the attorney/client relationship." *Id.* at 498. Upon granting the second attorney's request to withdraw, the district court instructed the

---

**7.** *Research Automation Corp.,* involved a trial court's entry of default judgment as a Rule 37(d) sanction. A similarly strict construction of the term "appear" is equally appropriate where the sanction is a dismissal of a plaintiff's suit as in this case. We express no opinion as to the proper construction of the term "appear" in cases involving sanctions less severe than default judgment or dismissal.

plaintiffs to secure replacement counsel to represent them at a status conference scheduled two weeks later and warned the plaintiffs that "drastic consequences ... would ensue should they fail to obtain an attorney to represent them at trial." *Id.* at 499. However, the plaintiffs failed to secure new counsel to represent them at the status conference two weeks before trial, despite the court's instruction to do so. Furthermore, the plaintiffs failed to advise the district court that any efforts were being made to secure new counsel. On the day set for trial, an attorney appearing on behalf of the plaintiffs failed to arrive in time for a motion call to set a new trial date. Based on this course of behavior, the district court dismissed the plaintiffs' action for failure to prosecute, and this court affirmed the dismissal order. We quote the *Locascio* opinion at length because of its direct bearing on this case:

"While there are no clear-cut rules governing the exercise of discretion on a motion to dismiss for failure to prosecute, this circuit has adhered to a standard which looks to the question of arbitrariness on the part of the trial court in determining whether there is an abuse of discretion warranting reversal. *Link.* In general we will not set aside a trial court's discretionary order unless it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration. *Beshear v. Weinzapfel,* 474 F.2d 127 (7th Cir.1973) (adopting the standards set forth in *Particle Data Laboratories, Inc. v. Coulter Electronics, Inc.,* 420 F.2d 1174, 1178 (7th Cir.1969), governing appellate review of actions within a trial court's discretion).

"The instant case is a close and difficult one, due to the number of plaintiffs involved, external factors such as the congestion of the trial court's docket, and the severity of the sanction imposed. The

interests of justice require that the use of such an extreme and final solution as dismissal with prejudice be held in abeyance until it is clear that lesser sanctions either have not been or will not be effective to remedy the dilatory conduct. However, this court cannot substitute its judgment for that of the trial court simply because it might have acted differently in the trial judge's place. The record indicates a lack of prosecutive intent on plaintiffs' part in their inability to secure and retain counsel whom they were willing to allow to effectively prosecute their action, and in their failure to demonstrate to the satisfaction of the trial court that they had been and were continuing to make a concerted good faith effort to obtain an attorney to represent them at trial. Judge Getzendanner warned them of the drastic consequences that would ensue should they fail to secure a replacement for their trial attorney ...." *Id.*[8]

In this case the trial court admonished the plaintiff on two separate occasions, October 30 and December 14, 1981, to retain other counsel to represent him. In fact, on December 14, the court specifically informed Stevens "that I will have no alternative except to dismiss your lawsuit if we don't go to trial on the next trial date." Stevens responded by stating: "I will be prepared. If I don't, it won't be no excuse as far as I am concerned, because you did give me that time."[9] However, three months later and less than two weeks before the trial date, Stevens appeared for his deposition hearing without an attorney, without the documents requested in the subpoena *duces tecum,* and refused to proceed. Even though he had had three months to retain an attorney, he failed to do so and made no effort to inform the court that he had attempted to or was unable to secure counsel. In light of the

---

**8.** The decision in *Camps v. C & P Telephone Company,* 692 F.2d 120 (D.C.Cir.1981) is likewise relevant to this case. In *Camps,* a *pro se* litigant's Title VII employment discrimination suit was dismissed for failure to prosecute due to the plaintiff's late arrival at a status call. Reversing the district court, Chief Judge Robinson stated that "[w]e might well assess the

situation differently if this had not been his first infraction and especially if the court in addition to pinpointing his next appearance date, had informed Camps specifically of the consequences of late arrival." 692 F.2d at 125.

**9.** The plaintiff at no time expressed a desire to proceed *pro se.*

trial court's two separate instructions to Stevens to secure replacement counsel, even one untrained in the law should have realized the need to inform the court of his inability to retain an attorney, and to explain why he was unable to do so. *See Anthony v. Marion County General Hospital,* 617 F.2d 1164, 1169 (5th Cir.1980). Even after his actions had been dismissed, Stevens provided the court with at the most a very limited and vague affidavit reciting only unsubstantiated allegations that financial problems precluded him from securing replacement counsel. It is significant that on December 14, 1982, before his case was dismissed, Stevens told the court that he would be prepared to go to trial on March 29, 1983, yet his failure to retain counsel and his refusal to cooperate in trial preparation (the March 16, 1983 deposition) demonstrated that it was virtually certain that the plaintiff would have been unprepared to proceed with trial on the scheduled trial date. Furthermore, in failing to heed the court's instructions to retain an attorney and in refusing to cooperate in trial preparation (the deposition), the plaintiff not only demonstrated that he would be unprepared for trial, but he also frustrated the defendant in its attempt to adequately prepare for trial.

■ Viewing this case "with regard to its own particular procedural history and the situation at the time of dismissal", the district court could reasonably have concluded that Stevens' conduct, viewed in its entirety, indicated "a lack of prosecutive intent . . .", *Locascio,* 694 F.2d at 499, sufficient to justify dismissing the plaintiff's actions less than two weeks before the scheduled trial date. Although his refusal to cooperate at the deposition hearing did not *of itself* justify dismissing the plaintiff's suit, we conclude, based on the totality of the facts and circumstances in this case, including the plaintiff's forcing the court on two separate occasions to grant a continuance due to the plaintiff's failure to retain counsel and prepare for trial, that "a reasonable person could concur in the trial court's assessment of the issue under consideration," *Locascio,* 694 F.2d at 499. Therefore, we hold that the trial court did not abuse its discretion in

dismissing the plaintiff's action under Rule 41(b) prior to the scheduled trial date since (1) the lawsuit had been pending for over four years and the court was forced to grant three continuances, two of which were necessary because of the plaintiff's failure to secure counsel and prepare for trial; (2) each delay in trying the case resulted in additional expense for the defendant and inconvenience for witnesses; (3) the court instructed the plaintiff on two separate occasions to obtain replacement counsel; (4) the court unequivocally warned the plaintiff of the consequences of a failure to obtain replacement counsel; (5) the plaintiff stated that he understood the consequences of failing to secure new counsel; (6) Stevens failed to advise the court over a three-month period that he was allegedly unable to secure new counsel; and (7) Stevens subsequently provided only vague generalized reasons for not securing counsel.

■ While we recognize that dismissal is a harsh sanction only to be imposed in extreme circumstances and that the law favors giving plaintiffs their day in court, *Scarver v. Allen,* 457 F.2d at 310, we must bear in mind that if our heavily burdened court system is to operate in an efficient manner and protect the interests of all litigants, including those long awaiting a trial date, courts must have at their disposal the sanction of dismissal in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not. The trial court demonstrated great patience with the plaintiff and a willingness to afford the plaintiff an opportunity to have his case heard. When it granted a continuance on December 14, 1981, the court stated: "I want to give him plenty of time. I want the case prepared; I want to try it. If he wants another year, we will give him another year." However, it is critically important that a trial court be able to maintain control over its calendar and that a trial date once set must be adhered to unless there are compelling reasons for granting a continuance. As the Supreme Court noted in *National Hockey League v. Metropolitan Hockey Club, Inc.:*

"[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

Our review of plaintiff's motion seeking relief from the district court's dismissal order pursuant to Federal Rule of Civil Procedure 60(b) is likewise limited to whether or not the district court abused its discretion. *United States v. $48,595,* 705 F.2d 909 (7th Cir.1983); *Planet Corporation v. Sullivan,* 702 F.2d 123 (7th Cir.1982). "Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Planet Corporation v. Sullivan,* 702 F.2d at 125. (citations omitted). The crux of Stevens' argument with regard to his Rule 60(b) motion seeking relief from the district court's dismissal order is that his failure to secure counsel amounts to excusable neglect on his part, and that because of "mistake and inadvertence" Stevens did not understand the severity of the sanctions which might be imposed against him. We reject Stevens' argument since the trial court on two separate occasions (October 30 and December 14, 1981) instructed the plaintiff to secure replacement counsel; the record of the December 14, 1981 hearing makes it eminently clear that Stevens was not only expressly advised that his case could be dismissed but, in fact, Stevens stated that he understood that his case would be dismissed if he failed to secure new counsel in a timely fashion. We hold that the plaintiff has failed to make a showing of exceptional circumstances justifying relief under Fed.R.Civ.P. 60(b) and that the district court did not abuse its discretion in refusing to grant the plaintiff's motion for relief from the dismissal order. We AFFIRM.