In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 18-3527 & 18-3583

NORMA L. COOKE,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

JACKSON NATIONAL LIFE INSURANCE COMPANY,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 817 — **Rubén Castillo**, *Chief Judge.*

SUBMITTED MARCH 12, 2019 — DECIDED MARCH 26, 2019

Before EASTERBROOK and BARRETT, *Circuit Judges,* and
STADTMUELLER, *District Judge.**

EASTERBROOK, *Circuit Judge.* In this suit under the diversity jurisdiction, a district court ordered Jackson National Life Insurance to pay about $191,000 on a policy of life insurance. 243 F. Supp. 3d 987 (N.D. Ill. 2017). The court added that the

---

* Of the Eastern District of Wisconsin, sitting by designation.

insurer had litigated unreasonably and ordered it to reimburse Cooke's legal fees under 215 ILCS 5/155. (Throughout this opinion "Cooke" refers to plaintiff Norma Cooke, the widow of decedent Charles Cooke.) The insurer paid the death benefit and appealed to contend that the court should not have tacked on attorneys' fees. But because the district court had not specified how much the insurer owes, we dismissed the appeal as premature. 882 F.3d 630 (7th Cir. 2018).

The district court then awarded $42,835 plus interest. 2018 U.S. Dist. LEXIS 197908 (N.D. Ill. Nov. 20, 2018). The insurer filed another appeal (No. 18-3527), which we resolve using the briefs filed in its initial appeal (No. 17-2080). Cooke filed a cross-appeal (No. 18-3583). Her lead contention is that the district court should have awarded a higher death benefit, but that argument comes too late. As our first decision explains, a judgment on the merits and an award of attorneys' fees are separately appealable. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988). Cooke did not appeal within 30 days of the district court's order specifying the amount payable on the policy, and a later award of attorneys' fees does not reopen that subject.

Instead of seeking additional fees, Cooke's brief in No. 18-3583 is principally devoted to contending that the judge did the right thing for the wrong reason. She made a similar argument in response to the insurer's initial appeal. We turn to the award under §5/155 and consider all of the arguments in all of the briefs filed in Nos. 17-2080 and 18-3583.

Section 5/155(1) provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasona-

ble delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

> (b) $60,000;

> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

The district judge understood this statute to allow an award either for pre-litigation conduct or for behavior during the litigation. 243 F. Supp. 3d at 1006. He wrote that "Jackson's denial of coverage was based on a good-faith dispute regarding the nature of Cooke's payments" (*ibid*.) and that the insurer could not properly be penalized for insisting that a judge resolve the parties' dispute. But, the judge added, "Jackson's behavior in this litigation has been much less reasonable." *Id*. at 1007.

The judge faulted the insurer because it opposed Cooke's motion for judgment on the pleadings without attaching the full policy to its papers. Jackson observed that Cooke had not supplied the court with all of the pertinent writings (which included an electronic funds transfer agreement as well as the policy) but failed to do so itself, until the summary-judgment stage, and the judge thought this unreasonable. *Ibid*. The judge summed up (*ibid*.):

> This Court believes that this case could have been resolved on Plaintiff's motion for judgment on the pleadings one year ago.

> This is a straightforward insurance policy dispute with essentially undisputed facts, and the primary issue is the interpretation of the policy. Had Jackson provided with its response the full document to be construed, or clearly identified those documents it had already turned over that it contended were necessary to interpret the policy, this case may have been resolved one year ago. By frustrating Plaintiff's motion solely by pointing to the incomplete policy and then coyly refusing to identify the deficiency for months thereafter, Defendant unnecessarily and unreasonably extended this litigation for no reason related to its good-faith position on the merits.

The district court assumed that §5/155 governs the conduct of litigation in federal court. It did not explain why. Many cases hold that federal, not state, rules apply to procedural matters—such as what ought to be attached to pleadings—in all federal suits, whether they arise under federal or state law. See, e.g., *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010); *Burlington Northern R.R. v. Woods*, 480 U.S. 1 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980); *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994). Federal rules and doctrines provide ample means to penalize unreasonable or vexatious conduct in federal litigation. The district court's decision to rely on state rather than federal law was a mistake.

Cooke tells us that *TKK USA, Inc. v. Safety National Casualty Corp.*, 727 F.3d 782, 795 (7th Cir. 2013), has established that §5/155 regulates the conduct of federal litigation. We do not read it so. The district judge in *TKK* cited §5/155 in support of an award against an insurer that filed unnecessary and unreasonable papers. In contesting that award, the insurer did not rely on *Shady Grove* and its predecessors. Instead it argued that its litigation strategy had been reasonable. We agreed with the district court on that score, and by

doing so we did not resolve an issue (the extent to which state law governs the conduct of federal litigation) that was neither briefed by the parties nor mentioned in the opinion.

It has long been understood that federal judges have a common-law power (sometimes called an inherent power) to impose sanctions on parties that needlessly run up the costs of litigation. See *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The parties and the panel in *TKK* understandably did not focus on the source of law, when §5/155 and *Chambers* came to the same thing. But the district court in our case did not invoke *Chambers* or treat §5/155 as a doppelganger of the *Chambers* doctrine. Instead it penalized Jackson for failing to attach evidence to a document at the pleading stage.

The initial question should have been whether the Rules of Civil Procedure require a defendant to attach documents to a filing that opposes a plaintiff's request, under Rule 12(c), for judgment on the pleadings. The answer is no. Quite the contrary. Although attaching documents is permissible, the usual consequence is to defeat the motion and require the case to proceed to summary judgment. Rule 12(d) reads:

> RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Courts occasionally hold that, despite the word "must" in Rule 12(d), presenting the court with matters outside the pleadings does not inevitably move the suit to the summary-judgment stage. See, e.g., *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013). But conversion to summary

judgment is the norm under Rule 12(d), which makes it hard to see how Jackson can be penalized for taking a step (*not* attaching documents) that had the same effect as attaching them: moving to summary judgment. If the district judge believed that §5/155 changes the rules for what documents must be attached to which filings, and with what effect, it was giving state law forbidden priority over a federal rule.

Perhaps the district judge did not mean to penalize the insurer just for its failure to attach documents to papers opposing Cooke's motion. Several passages in the judge's opinion imply that the problem was Jackson's failure to *identify* all of the pertinent documents, which had already been turned over under Fed. R. Civ. P. 26(a), so that the parties could focus their efforts on them. We agree with the district judge that Jackson could and should have done this earlier than it did. Imposing sanctions for failing to point to the right documents could have been justified under *Chambers*. But Cooke has not used this doctrine to defend the district court's decision or asked us to remand so that the judge can consider *Chambers*. Instead she relies on Fed. R. Civ. P. 11, 26(g)(3), and 37(b)(2)(C), plus 28 U.S.C. §1927.

Rule 11 concerns the pleadings, and neither Cooke nor the district judge identified any problem with the insurer's pleadings. Nor did Cooke make the motion required by Rule 11(c)(2).

Rule 26(g)(3) reads:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay

the reasonable expenses, including attorney's fees, caused by the violation.

Rule 26(g)(1), to which Rule 26(g)(3) refers, requires a party or her attorney to certify that its disclosures are complete and that any requested discovery is legally appropriate and not presented to harass the opponent or needlessly increase the cost of litigation. A false certificate is a good reason for a financial penalty—but Cooke does not develop an argument that Jackson's lawyers signed a false certificate, let alone that the district court found any violation of Rule 26. Jackson turned over the policy and related papers as part of its Rule 26 disclosures. Cooke says that Jackson did not identify, clearly enough, just what parts of its disclosures it was relying on when opposing her motion, but that's outside the scope of Rule 26.

Rule 37(b)(2)(C) provides that any litigant who disobeys a judge's order with respect to discovery must pay the other side's costs, including attorneys' fees. Yet Cooke does not contend that it requested, or that the district judge issued, any order requiring Jackson to produce additional documents in discovery. Rule 37 is irrelevant.

So is §1927. It allows a court to penalize a lawyer who "multiplies the proceedings in any case unreasonably and vexatiously". But liability under §1927 is personal to the lawyer; the client may not be ordered to pay for counsel's misconduct. See, e.g., *Byrne v. Neshat*, 261 F.3d 1075, 1106 (11th Cir. 2001); *Matta v. May*, 118 F.3d 410, 413–14 (5th Cir. 1997). The district court's award of attorneys' fees against Jackson therefore cannot be supported by §1927.

Cooke contends that the award of fees should be affirmed for a reason that the district court rejected: that Jackson acted

unreasonably and vexatiously before litigation began. Illinois asks whether an insurer's conduct was objectively unreasonable or vexatious. See *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 745 (2010); *Norman v. American National Fire Insurance Co.*, 198 Ill. App. 3d 269, 303–05 (1990). (Other decisions articulate a subjective standard. See, e.g., *Deverman v. Country Mutual Insurance Co.*, 56 Ill. App. 3d 122, 124 (1977). For current purposes we assume that an objective approach governs.) In writing that Jackson's pre-suit denial of coverage "was based on a good-faith dispute regarding the nature of Cooke's payments" (243 F. Supp. 3d at 1006), Cooke contends, the judge asked and answered a question about Jackson's state of mind.

It is possible to read the district court's bottom line as Cooke does, but we do not think it the best reading. The bulk of the analysis is objective.

Charles Cooke had a policy of life insurance. For 15 years he paid premiums by monthly electronic transfers from his bank account, though the policy itself called for either annual or quarterly premiums. In May 2013 Jackson informed Charles that his premium for the next year (beginning in July) would be $2,835.85 a month. Toward the end of July the insurer sent the usual transfer request to Charles's bank, which rejected it because the account lacked sufficient funds. This started a 31-day grace period under the policy: Charles had until August 28 to make good the July payment or the policy would be cancelled. On August 15 Jackson sent Charles a letter telling him that he now owed a quarterly payment of $8,637.94. This letter specified a (retroactive) due date of July 28, which again implied that the grace period would end on August 28. But Charles did not pay anything

that month—not the $2,835.85 for July, not the payment for August, and not the $8,637.94 for the quarter. Charles died on September 10, 2013, and Jackson declined to pay the death benefit, telling his widow that the policy had lapsed because of non-payment plus the expiration of the grace period.

When the suit began in 2015 Cooke contended that Jackson had waived its right to enforce the policy's payment terms or was estopped to do so. She filed an amended complaint in 2016 changing her theory. The amended complaint asserted that the letter of mid-August created a new grace period, running through September 15, even though the grace period (and thus the policy) otherwise would have expired on August 28, and even though the letter gave a due date implying that the end of the grace period remained August 28. The district judge eventually agreed with Cooke's contention, after conceding that neither the policy nor any state statute or decision said that a switch from monthly to quarterly premium collection would extend the grace period. (Recall that Charles did not pay the premium for either July or August and died on September 10, which made it look like he was well over 31 days in arrears.) The district judge concluded that the lack of language in the policy or state law about how to handle an unpaid monthly premium, followed by a demand for a quarterly premium, made it improper to apply the label "vexatious and unreasonable" to the insurer's decision to litigate rather than pay on demand. 243 F. Supp. 3d 1006–07. That is an objective analysis—it turns on the events in the world, and on the (lack of) applicable law, not on the contents of anyone's head.

This means that an award under §5/155 could be justified only by Jackson's conduct during the litigation. For the reasons we have already given, federal rather than state law governs how federal litigation is conducted, plus when (and who) may be penalized for misconduct. As we have rejected Cooke's arguments under federal law, the award must be reversed. And this means that we must reject Cooke's argument that §5/155 entitles her to legal fees incurred in opposing Jackson's appeals.

REVERSED