In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1957

JOHN EVANS,

*Plaintiff-Appellant,*

*v.*

SUSAN GRIFFIN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 16-3093-HAB — **Harold A. Baker**, *Judge.*

ARGUED FEBRUARY 4, 2019 — DECIDED AUGUST 7, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and ST. EVE,
*Circuit Judges.*

WOOD, *Chief Judge*. John Evans is a state prisoner and, un-questionably, not a healthy man. His most recent malady is the subject of this lawsuit. Evans alleges that he developed nasal polyps and that the prison medical staff refused to authorize surgery—the only effective remedy—for him. Frustrated within the prison, he brought this suit under 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights. The

district court never reached the merits of that claim, however, because it dismissed Evans's case with prejudice as a discovery sanction. Dr. Francis Kayira, one of the defendants, attempted to depose Evans. Kayira noticed the deposition by mail on Thursday, February 16, 2017, for the next Tuesday, February 21. Evans swears that he did not receive that notice until February 22, the day after the designated time. When, on the 21st, he was brought out from his cell to meet with the defendants' lawyers, he says that he had no idea why they were there. Further, he was feeling ill and could not (and would not) sit for the deposition. Evans refused to be sworn or to answer any questions.

Thwarted in his discovery effort, Kayira moved for sanctions, seeking either reimbursement for the costs of the failed deposition or dismissal with prejudice. The district court granted the latter sanction, citing Federal Rules of Civil Procedure 37(b) and 37(d) and finding that a sanction of costs would be fruitless because Evans is an indigent prisoner. Although dismissal is indeed sometimes the proper sanction for a discovery violation, we conclude that the district court jumped too quickly in that direction. We therefore reverse and remand for further proceedings.

## I

On April 6, 2016, Evans filed a civil rights complaint alleging that Susan Griffin and Dr. Francis Kayira, both medical providers at Illinois's Graham Correctional Center, exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment (as applied to the states through the Fourteenth Amendment). Evans alleged that, in addition to his various other medical issues—which included high blood pressure, HIV, and kidney problems necessitating

dialysis—he had developed nasal polyps. While Griffin and Kayira had prescribed medication for his nasal polyps, that medication had neither reduced the polyps nor relieved his symptoms. This, Evans alleges, is unsurprising because outside physicians had stated that surgery was the only way to cure his condition. Kayira and Griffin, however, refused to allow Evans to see an outside specialist for treatment or surgery.

For approximately a year, discovery proceeded as scheduled, and the record suggests that the parties had few, if any, discovery disputes. In its case management order, the district court had granted the defendants "leave to depose the plaintiff at his place of confinement," as Federal Rule of Civil Procedure 30(a)(2)(B) requires for depositions of incarcerated persons. Shortly before the close of discovery, Kayira attempted to take advantage of this opportunity.

On Thursday, February 16, 2017, Kayira mailed a notice to Evans, informing him that his deposition was scheduled for the morning of Tuesday, February 21, 2017, at Graham prison, where Evans was incarcerated. But on Tuesday morning, when guards brought Evans to Graham's videoconferencing room for the deposition, he expressed confusion about what was happening. In both on and off-the-record conversations with defendants' counsel, Evans stated that he did not know why he was in the room with defendants' counsel. Told he was there for his deposition, Evans protested that he did not wish to proceed for multiple reasons, including because he did not feel well. He also made several on-the-record statements suggesting that he never received Kayira's notice. He said, for example, that "[i]f you hire [a court reporter], send me a notice and let me know you're going to be here. Don't

just run up on me to this and this and this and that." He added that "I wish you had sent me something through the mail letting me know that you [were] going to have another deposition."

Kayira's counsel pushed back, stating that in his estimation, Evans appeared physically and mentally able to proceed, and that he had offered to take additional breaks and to allow Evans to review copies of the documents he had brought along as needed. Kayira's counsel also volunteered that he "get[s] the same kind of playbook from inmates a lot"—meaning that in his experience they often manufactured reasons not to go forward with a deposition.

With the deposition ended before it could begin, Kayira filed a motion for sanctions under Federal Rules of Civil Procedure 37(b) and 37(d), seeking either the costs of the deposition or dismissal of Evans's claims with prejudice. Evans responded with a sworn statement explaining that he had been in segregation since February 4 and did not receive the notice of deposition until the guards passed out mail to the segregated prisoners at 6:30 p.m. on February 22, 2017, the day after the attempted deposition. He reiterated that as a result of the prison's mail-distribution policy he "had no idea" that the deposition was going to occur until he was brought to the videoconferencing room. The district court granted Kayira's motion for sanctions, relying on Federal Rule of Civil Procedure 37(b), which governs failure to obey an order to provide or permit discovery, and Rule 37(d), which concerns failing to appear for a deposition.

## II

We review a district court's decision to grant sanctions, as well as the choice of which sanctions to impose, for an abuse of discretion. *Pendell v. City of Peoria*, 799 F.3d 916, 917 (7th Cir. 2015). "A lower court 'abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact.'" *In re Veluchamy*, 879 F.3d 808, 823 (7th Cir. 2018) (quoting *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892 (7th Cir. 2012)).

## A

The question before us is whether the district court correctly relied on Rules 37(b) and 37(d) for its sanctions order. Neither part of Rule 37, we conclude, fits this situation. Rule 37(d) applies only when "a party … fails, *after being served with proper notice,* to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i) (emphasis added). Setting aside for a moment the question of notice, we note that we have said in the past that this rule applies only "where a [party] literally fails to show up for a deposition session." *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir. 1983) (quoting *Securities and Exch. Comm. v. Research Automation Corp.*, 521 F.2d 585, 588–89 (2d Cir. 1975)). Evans physically appeared for his deposition (indeed, because guards brought him there, he had little choice in the matter). The problem was a refusal to participate, not a failure to show up. *Stevens* indicates that if a party "does in fact appear physically for the taking of his deposition but refuses to cooperate … the proper procedure is first to obtain an order from the court, as authorized by Rule 37(a), directing him to be sworn and testify." *Id.*

Kayira argues that we have abandoned this strict interpretation of Rule 37(d) in more recent cases. See *Collins v. Illinois*,

554 F.3d 693 (7th Cir. 2009). A close review of *Collins*, however, shows that Rule 37(d) sanctions in that case were proper under the line drawn in *Stevens*. In addition to Collins's numerous other discovery abuses—including walking out of one properly noticed deposition—there was more: the district court left no doubt that Collins had skipped an earlier, properly noticed, attempt to depose her. See *Collins v. Illinois*, 514 F. Supp. 2d 1106, 1109–10 (C.D. Ill. 2007) (discussing Collins's August 15 deposition and noting that "despite being available, and despite having received oral notice on August 10 and written notice on August 13, the Plaintiff did not attend the deposition or contact counsel to say that she would not attend").

Evans seems to have conceded that the distinction drawn in *Stevens* is only *dictum* and not a binding holding. But even if we were to question the functional difference between a failure physically to show up and a refusal to say a word (a distinction whose implications we do not need to explore further in this case), sanctions could not be imposed under Rule 37(d). As we emphasized above, that part of the rule applies only after the proposed deponent has been served with proper notice, and, taking the facts in the light most favorable to Evans, that was missing here. We thus reject Rule 37(d) as a basis for the district court's order.

Kayira fares no better under Rule 37(b). Sanctions are possible under subpart (b) of Rule 37 only when a litigant fails "to comply with a court order" (capitalization omitted). Use of Rule 37(b) is therefore impossible if there is no court order in place. A party lays the predicate for Rule 37(b) sanctions by filing a motion under Rule 37(a) seeking "an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). Only if (and

to the extent) the court grants that order, and then the person subject to the order fails to comply with it, may the party seeking discovery move on to Rule 37(b) and ask for sanctions. See *Stevens*, 710 F.2d at 1228. Kayira skipped the essential first step of this process, instead immediately seeking sanctions.

Perhaps recognizing this misstep, Kayira now argues that the district court's orders permitting him to take Evans's deposition and setting a deadline for the close of discovery are equivalent to a motion to compel Evans's testimony. Not so. Neither of those orders *compelled* Evans to answer any questions, produce any documents, or sit for a deposition at all. Both are form orders that the district court uses in many, if not all, *pro se* prisoner cases. They serve perfectly well as case-management and scheduling orders, but they are a far cry from the targeted order requiring compliance with a particular discovery request contemplated by Rule 37(a). While we do not rule out the possibility that a standard order can ever suffice, we have no trouble saying that the orders in this case did not.

The district court's order permitting Evans's deposition stated only that "[c]ounsel for the defendants is hereby granted leave to depose the plaintiff at his place of confinement. Counsel for the defendants shall arrange the time for the deposition." This language, far from being an order compelling Evans to do anything, is directed towards defendants' counsel. Its language is permissive, not mandatory. The district court's scheduling order is similarly unhelpful. That order required the parties to complete discovery by March 1, 2017. It did not direct either party to engage in any specific course of discovery. Indeed, it required the opposite: that both parties cease their discovery attempts by the stated date.

## B

Though neither Rule 37(b) nor Rule 37(d) sanctions were appropriate here, Kayira also tries to rely on the district court's inherent authority to impose sanctions for discovery abuses. See *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1027 (7th Cir. 2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). But the Supreme Court has cautioned that this power "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. In addition, the district court's use of its inherent power must be grounded in factual findings supported by the record. Here, the district court made no finding that Evans received notice, and we see no basis for such a finding on this record. Without proper notice, Evans was not required to sit for what amounted to a surprise-attack deposition. See FED. R. CIV. P. 30(b)(1) (requiring "reasonable written notice" before the taking of an oral deposition).

The evidence on this issue is one-sided, and it all points towards Evans's not receiving notice until after the date of the deposition. Evans provided a sworn statement that he did not receive timely notice. His statement is uncontradicted by any other statements (sworn or unsworn) or documents in the record. Kayira seemingly made no attempt to confirm whether or when his notice was received by the prison and delivered to Evans. Showing optimism about the postal service that may have been unwarranted, Kayira placed the deposition notice in the U.S. mail on Thursday for a Tuesday morning deposition; there is no indication that he used an expedited delivery option. Even indulging in the unlikely assumption that the prison would operate its mailroom seven days a week, Kayira allowed only five days for this notice to traverse the prison mail system.

Courts have long recognized the sluggishness of prison mail, even going so far as to create special rules to stop delays in that system from causing unwarranted prejudice to prisoner-litigants. See, *e.g.*, *Ray v. Clements*, 700 F.3d 993, 1002–03 (7th Cir. 2012) (discussing the prison mailbox rule and the reasons for it, including the possibility of "slow mail service"); see also *Turley v. Clendenin*, No. 3:15-CV-27-NJR-DGW, 2017 WL 735581, at *2 (S.D. Ill. Feb. 24, 2017) ("Dropping an envelope in the mail and assuming it will be delivered to a prisoner three days later is patently unreasonable."). Further, throughout Evans's case, a week or more often elapsed between when he placed a document in the prison mail system and when it was filed with the district court. See, *e.g.*, Complaint 10, ECF No. 1 (sent March 30, 2016, filed April 6, 2016); Plaintiff Motion for Reconsideration 9, ECF No. 31 (sent October 31, 2016, filed November 7, 2016); Letter from Plaintiff 2, ECF No. 52 (sent March 20, 2017, filed March 29, 2017). It is thus plausible, if not likely, that Kayira's mailed notice did not reach Evans before the deposition.

Even if Kayira's notice was in Evans's hands prior to the deposition, it still might have been untimely if it reached him so late that he had no time to prepare. Rule 30(b)(1)'s "reasonable written notice" requirement is designed to ensure that a deponent has the opportunity to prepare adequately for her deposition. In some cases, where the facts are simple or the parties are clearly prepared, notice of even one day may be reasonable. See, *e.g.*, *Radio Corp. of Am. v. Rauland Corp.*, 21 F.R.D. 113, 114–15 (N.D. Ill. 1957) (one-day notice not unreasonable where the relevant parties and counsel were all in the same city and already taking other depositions). But that is not the situation here. This was not a case where Evans could draw solely on his own memories to answer counsel's

questions. There were numerous documents for Evans to review, and it was reasonable for him to expect to be questioned about them; Kayira's counsel brought them to the deposition for exactly that purpose. Yet there was no guarantee that Evans would have immediate access to these documents while incarcerated. To the contrary, Evans has alleged that he does not have immediate access to his legal documents. This preparation time is essential, because a deposition is a major event in the life of a case. Both courts and juries can, and regularly do, disregard a party's later statements that contradict earlier deposition testimony. See, *e.g.*, *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1167 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.").

But we do not have to decide whether a day, or two or three, of preparation time would have been sufficient for Evans because, as defense counsel conceded at oral argument, Evans was entitled at least to *actual notice*. See FED. R. CIV. P. 30(b)(1) ("A party who wants to depose a person by oral questions must give reasonable written notice to every other party."). And there is no evidence in the record that Evans received any notice before the deposition occurred. Evans's sworn statement to that effect is bolstered by his confusion upon entering the room and his prompt objection that he wished he had received notice. The short time that Kayira budgeted for the notice to navigate the prison mail system also supports Evans's position. In response, Kayira offers only vague speculation that prisoners in other cases have, in his counsel's opinion, used the excuse of being sick to avoid being deposed. This speculation based on experiences with other imprisoned litigants cannot tip the balance away from

Evans's sworn statement and unsworn complaints during the deposition.

## III

Dismissing a case with prejudice is one of the harshest sanctions a court can impose, and so courts must be especially careful before taking that step. Even in the case of an indigent prisoner for whom a high-dollar fine might be inappropriate, other sanctions, including those listed in Federal Rule of Civil Procedure 37(b)(2), are available: for example, a warning from the court, a small financial sanction, taking certain facts to be established in favor of the party that secured an order compelling discovery, or dismissal without prejudice. One of these will often be enough to deter and punish misconduct. And the gravity of the misconduct must always inform the choice of sanction. Here, the district court went too far by dismissing Evans's case with prejudice for the assumed discovery violation. We therefore REVERSE the judgment of the district court and REMAND this case for further proceedings.